FALK & FISH, L.L.P., Appellant,

v.

PINKSTON'S LAWNMOWER AND EQUIPMENT, INC., Appellee.

No. 05–08–01389–CV.

Court of Appeals of Texas, Dallas.

July 20, 2010.

Richard G. Danner, Jr., Dallas, TX, for Appellant.

Daniel J. Sheehan, Jr., John M. Phalen, Jr., Daniel Sheehan & Associates, L.L.P., Dallas, TX, for Appellee.

Before Justices MARTIN RICHTER, LANG–MIERS, and MYERS.

## OPINION

Opinion by Justice MARTIN RICHTER.

This appeal involves an attorney-client contract dispute. Appellant, Falk & Fish, L.L.P., appeals from the trial court's order of dismissal which sustained the amended special appearance of Pinkston's Lawnmower and Equipment, Inc. and dismissed the claims of Falk & Fish for lack of personal jurisdiction. In two issues, appellant contends the trial court erred by failing to enforce a unambiguous forum selection clause whereby appellee consented to jurisdiction in Texas, or alternatively, if the forum selection clause is ambiguous, by not submitting it to the jury for interpretation. We affirm.

## I. BACKGROUND

Pinkston's Lawnmower and Equipment, Inc. (PLE) is a North Carolina corporation with its principal place of business in North Carolina. Randy Pinkston (Pinkston), a North Carolina resident, is the president of PLE. Robert Hardy Falk (Falk) is the managing partner of the Dallas, Texas law firm of Falk & Fish, L.L.P. (Falk & Fish). Falk is licensed to practice law in North Carolina and Texas. PLE hired Falk to represent it in a lawsuit in North Carolina federal court. From October 2005 through March 2006, Falk & Fish billed PLE for eighty-five hours of legal services performed. In March 2006, Falk met with Pinkston at PLE's offices and gave him an attorney-client engagement agreement which detailed the terms of Falk & Fish's representation of PLE. Pinkston signed the agreement as president of PLE.

PLE's North Carolina lawsuit did not go well. Likewise, the attorney-client relationship between PLE and Falk & Fish deteriorated. Falk & Fish billed PLE for legal services and expenses and PLE failed to pay all of the amounts billed. Ultimately, Falk & Fish filed a breach of contract lawsuit against PLE in Dallas County, Texas. In its original petition, Falk & Fish stated the court had jurisdiction over PLE by virtue of the contract between the parties in which PLE consented to jurisdiction in this state and county.

PLE filed a special appearance, asserting the trial court did not have general or specific jurisdiction over it and the contract at issue did not evidence consent to such jurisdiction. PLE attached a copy of the agreement and an affidavit of its president, Pinkston, who averred that PLE had no contacts with Texas. Further, Pinkston stated that prior to signing the attorney-client agreement, no Falk & Fish attorney explained the terms of the agreement, including the meaning of the following clause: "[y]ou agree our relationship and our agreement is controlled by Texas law, and the applicable courts of Dallas, Texas shall be the *for a* [sic] for all attorney-client disputes." PLE filed an amended special appearance, supported by additional exhibits and a more detailed af-

fidavit of Pinkston in which he stated, "[a]t no time before signing the Engagement Agreement did Robert Falk advise me that any dispute between Pinkston Lawnmower and Falk & Fish, LLP would have to be resolved in Dallas, Texas. Nor did Mr. Falk advise me that Pinkston Lawnmower, by signing the agreement, was waiving its right to litigate any disputes with Falk & Fish, LLP in North Carolina. At the time I signed the Engagement Agreement, I did not understand that Pinkston Lawnmower was agreeing to litigate any disputes with Falk & Fish, LLP in Texas and I believed that any such disputes would be resolved in North Carolina."

In its response to PLE's amended special appearance, Falk & Fish asserted the forum selection clause in the attorney-client agreement was valid and enforceable. Falk & Fish attached the affidavit of Falk, who stated he explained the engagement letter, including the forum selection clause, to Pinkston before Pinkston signed it. Falk & Fish also attached a copy of the transcript of a deposition of Pinkston in which he admitted he did not read the attorney-client agreement before signing it.

On June 5, 2008, the trial court conducted a hearing on PLE's amended special appearance. The record does not contain a reporter's record of the hearing. On June 16, 2008, the trial court signed an order of dismissal, sustaining PLE's amended special appearance, and dismissing Falk & Fish's claims for lack of personal jurisdiction over PLE.

On July 16, 2008, Falk & Fish filed an untimely request for findings of fact and conclusions of law with a motion to suspend rule 296 of the Texas Rules of Civil Procedure to allow a late request. Falk & Fish also filed a motion for new trial. The record does not reflect a ruling by the trial

court on Falk & Fish's motion for new trial. Consequently, the motion was overruled by operation of law. This appeal followed.

## II. STANDARD OF REVIEW

When we review a trial court's order granting a special appearance, we review the court's factual findings for legal and factual sufficiency and its legal conclusions de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002); *Hoffmann v. Dandurand*, 180 S.W.3d 340, 345 (Tex.App.-Dallas 2005, no pet.). When a trial court does not issue findings of fact and conclusions of law, we infer all facts necessary to support the judgment if they are supported by the evidence. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex.2007); *BMC Software Belgium*, 83 S.W.3d at 795. Here, the trial court did not issue findings of fact and conclusions of law. Consequently, by granting the special appearance, the court impliedly found that the forum selection clause in the attorney-client agreement was unenforceable.

We review the validity and enforceability of a forum selection clause under an abuse of discretion standard. *CNOOC Southeast Asia Ltd. v. Paladin Resources (Sunda) Ltd.*, 222 S.W.3d 889, 894 (Tex. App.-Dallas 2007, pet. denied); *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 610 (Tex.App.-Houston [1st Dist.] 2005, no pet.). We review contractual interpretation of a forum selection clause de novo. *Id.*

## III. DISCUSSION

■ On appeal, Falk first complains that the trial court erred by failing to enforce the forum selection clause in the attorney-client agreement. The agreement contains the following provision: "[y]ou agree our relationship and our

agreement is controlled by Texas law, and the applicable courts of Dallas, Texas shall be the *for a* [sic] for all attorney-client disputes." Falk argues this provision is a valid and enforceable forum selection clause whereby PLE voluntarily consented to the jurisdiction of the Dallas, Texas courts.

▮ Forum selection clauses are generally enforceable. *In re AIU Ins. Co.,* 148 S.W.3d 109, 111–12 (Tex.2004). A party attempting to show that such a clause should not be enforced bears a heavy burden to prove the clause is invalid. *In re Int'l Profit Assocs., Inc.* 286 S.W.3d 921, 923 (Tex.2009) (orig. proceeding) (per curiam). A trial court abuses its discretion if it refuses to enforce a forum selection clause unless the party opposing enforcement clearly shows that: (1) enforcement would be unreasonable or unjust; (2) the clause is invalid for reasons of fraud or overreaching; (3) enforcement would contravene a strong public policy of the forum where the suit was brought; or (4) the selected forum would be seriously inconvenient for trial. *Id.*

▮ In its amended special appearance, PLE asserted it did not consent to jurisdiction in Texas because "the plain wording of the clause is insufficient to establish personal jurisdiction over Pinkston." PLE contends the provision is unintelligible and therefore, unenforceable. We first consider whether the subject provision is a forum selection clause. On its face, the provision does not appear to be a forum selection clause. The plain and unequivocal language of the provision does not include the words "forum" or "jurisdiction," two words commonly included in forum selection clauses. Falk & Fish concedes the provision contains a typographical error, "for a" instead of "forum," but argues the omission of the word "forum" does not matter because Pinkston did not read the contract

before signing it. We do not construe contracts or decide cases based on the inclusion or exclusion of "magic words." *Deep Nines, Inc. v. McAfee, Inc.,* 246 S.W.3d 842, 846 (Tex.App.-Dallas 2008, no pet.). However, we are mindful that in this case the forum selection clause is the basis for personal jurisdiction over PLE. PLE asserts it has no contacts with Texas that would otherwise give rise to the jurisdiction of Texas courts.

▮ Falk & Fish argues the provision is not confusing or ambiguous because the agreement must be read as a whole and its provisions harmonized to express the intent of the parties. Falk & Fish also argues the provision is not ambiguous because PLE has not proposed an alternative reasonable interpretation of the provision. A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). However, when a written contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous and the court construes it as a matter of law. *Id.; see also Sefzik v. Mady Development, L.P.,* 231 S.W.3d 456, 460 (Tex.App.-Dallas 2007, no pet.). When interpreting a contract, we also examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n,* 205 S.W.3d 46, 55 (Tex.App.-Dallas 2006, pet. denied); *Pratt–Shaw v. Pilgrim's Pride Corp.,* 122 S.W.3d 825, 829 (Tex.App.-Dallas 2003, pet. denied). With respect to typographical errors, "written contracts will be construed according to the intention of the parties, notwithstanding errors and omissions, by perusing the entire document and to this end, words, names, and phrases obviously

intended may be supplied." *City of Galveston v. Galveston Mun. Police Ass'n,* 57 S.W.3d 532, 539 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). After examining the entire agreement as a whole in an effort to harmonize and give effect to the provision in question, we conclude the provision is not ambiguous. The typographical error "for a" may be interpreted to mean "forum" and thus give meaning to the provision.

▆ Because the forum selection clause was not clear on its face and required harmonization and interpretation to give meaning to the language of the provision, we next consider whether it constitutes a waiver of PLE's objection to personal jurisdiction in Dallas, Texas. A forum selection clause obtained through freely negotiated agreements does not offend due process, provided it is not unreasonable and unjust. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *CNOOC Southeast Asia,* 222 S.W.3d at 894. In its brief, Falk & Fish refers us to a number of cases in which the Texas Supreme Court held enforcement of forum selection clauses is mandatory unless the party opposing enforcement clearly shows that enforcement is unreasonable and unjust, or that the clause is invalid for reasons such as fraud or overreaching. *See In re AIU,* 148 S.W.3d at 112; *In re Automated Collection Technologies, Inc.,* 156 S.W.3d 557, 559 (Tex.2004). However, in the cases cited by Falk & Fish, the forum selection clauses were clear and unequivocal and did not require interpretation to give meaning to the provisions. *See In re AIU,* 148 S.W.3d at 111 ("[T]he Insured and the Company agree that the law of the State of New York shall apply and that all litigation, arbitration or other form of dispute resolution shall take place in the State of New York"); *In re Auto-*

*mated Collection Technologies,* 156 S.W.3d at 558 ("The parties hereto consent to the exclusive jurisdiction of the courts of Montgomery County, Pennsylvania."). We do not have a clear, explicit forum selection clause in this case.

Falk & Fish drafted the attorney-client engagement agreement. On March 24, 2006, approximately six months after Falk & Fish began representing PLE, Falk gave PLE the agreement which detailed the terms of Falk & Fish's representation of PLE. It is troubling that the parties entered into the attorney-client agreement after representation had begun. *See* Restatement (Third) of the Law Governing Lawyers § 18 cmt. c (2000) ("[C]lient-lawyer fee contracts entered into after the matter in question is under way are subject to special scrutiny."). A client might accept such an agreement because it is difficult or expensive to change attorneys after representation has begun or a client might be reluctant to suggest changes to the terms proposed by the attorney in the agreement. *Id.*

▆ When interpreting and enforcing an attorney-client agreement, the Texas Supreme Court has admonished us to be mindful of the ethical considerations overlaying the contractual relationship between an attorney and client. *Hoover Slovacek LLP v. Walton,* 206 S.W.3d 557, 560 (Tex.2006). An attorney has a special responsibility to maintain the highest standards of conduct and fair dealing when contracting with a client or otherwise taking a position adverse to the client's interests. *Id.* To place the burden of clarifying attorney-client agreements on the attorney is justified, not only by the attorney's greater knowledge and experience with respect to such agreements, but also by the trust the client has placed in the attorney. *Levine v. Bayne, Snell & Krause, Ltd.,* 40 S.W.3d 92, 95

(Tex.2001). According to the Restatement of the Law Governing Lawyers, contracts between an attorney and client should first be construed from the standpoint of a reasonable person in the client's circumstances. *See* Restatement (Third) of the Law Governing Lawyers § 18 cmt. h. "The lawyer thus bears the burden of ensuring that the contract states any terms diverging from a reasonable client's expectations." *Id.* Although much of the case law illustrating this construction principle addresses disputes over fee terms, the principle is applied to other terms as well. *Id.* One of the reasons for this rule of construction is that attorneys are more able than most clients to detect and repair omissions or ambiguities in attorney-client agreements. *Id.* This does not preclude reliance on the usual resources of contractual interpretation such as the contract language, the circumstances in which the contract was made, the client's sophistication and experience in retaining and compensating attorneys, and whether the contract terms were truly negotiated. *Id.*

 In this case, we do not have a sophisticated and experienced client who vigorously negotiated the fee agreement with his attorney. Instead, the record reflects that Pinkston, who signed the contract as president of PLE, is an unsophisticated and inexperienced individual whose attorney presented an already drafted agreement six months after representation had begun. There is nothing in the record to indicate the agreement was negotiated. According to the record, Pinkston signed the agreement without reading it. Being unaware of the forum selection clause does not make it invalid. *In re Lyon Fin. Servs., Inc.,* 257 S.W.3d 228, 233 (Tex. 2008). "Parties to a contract have an obligation to protect themselves by reading what they sign and, absent a showing of fraud, cannot excuse themselves from the

consequences of failing to meet that obligation." *Id.* In this case, however, even if Pinkston had read the contract prior to signing it, the drafting error by Falk & Fish resulted in a provision that was not a clear forum selection clause.

The parties dispute whether Falk explained the forum selection provision to Pinkston. In his affidavit supporting PLE's amended special appearance, Pinkston asserted Falk did not advise him of the forum selection provision or explain its meaning. In Falk's affidavit in support of Falk & Fish's defense to PLE's amended special appearance, Falk stated he explained the terms of the agreement to Pinkston before he signed it, including the forum selection clause. We question why Falk did not detect and correct the typographical error at the time he explained to Pinkston that the provision in question meant that any attorney-client disputes would be litigated in the applicable courts of Dallas, Texas. Given the language of the contract, the circumstances in which it was made, the client's lack of sophistication and experience in retaining lawyers and the lack of negotiation, we conclude Falk & Fish had the burden of ensuring the contract clearly stated any terms that diverged from PLE's expectations. Restatement (Third) of the Law Governing Lawyers § 18 com. h.

 In its amended special appearance, PLE also argued the forum selection clause was unenforceable because (i) such enforcement would be unreasonable or unjust, and (ii) the clause was overreaching. The party claiming a forum selection clause should not be enforced bears a heavy burden of proof. *In re AIU Ins. Co.,* 148 S.W.3d at 113. When the inconvenience of litigating in the chosen forum is foreseeable at the time of contracting, the party seeking to avoid the forum selection clause must establish that "trial in the

contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.,quoting M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). To be found overreaching, the forum selection clause must result in unfair surprise or oppression. *In re ADM Investor Servs., Inc.,* 257 S.W.3d 817, 823 (Tex.App.-Tyler 2008, no pet.); *see also In re Lyon Fin. Servs.,* 257 S.W.3d at 232–33. The record reflects that at the time PLE entered into the attorney-client agreement with Falk & Fish, it did not contemplate litigating in Texas. PLE hired Falk, an attorney licensed in North Carolina, to represent PLE in litigation in North Carolina. The attorney-client agreement does not contain a clear, explicit forum selection clause. When a provision must be harmonized and interpreted in order to ascertain that it is a forum selection clause, we cannot conclude it is a mutually agreed forum, or that such forum was foreseeable at the time of contracting. We conclude PLE met its burden of proving the forum selection clause unreasonable in this case.

Because the forum selection clause was not clear on its face and required interpretation to give meaning to the language of the provision, we conclude PLE did not consent to personal jurisdiction in Dallas, Texas. We also conclude that enforcement would be unreasonable or unjust. Accordingly, the trial court did not abuse its discretion by refusing to enforce the forum selection clause.

In its second issue, Falk & Fish argues if the contract is ambiguous, which it contends it is not, the trial court erred by dismissing the lawsuit instead of giving the issue of interpretation to the jury. Because we conclude the contract is not ambiguous, we need not address Falk & Fish's second issue.

## IV. CONCLUSION

We conclude the trial court did not err by sustaining PLE's special appearance and dismissing Falk & Fish's claims for lack of personal jurisdiction over PLE. The trial court's order of dismissal is affirmed.