**Affirmed and Opinion filed September 18, 2018.**



In The

# Fourteenth Court of Appeals

NO. 14-17-00171-CV

**TAKAFUMI HORIE, Appellant**

**V.**

**THE LAW OFFICES OF ART DULA, ARTHUR M. DULA, INDIVIDUALLY AND D/B/A THE LAW OFFICES OF ART DULA, ANAT FRIEDMAN, INDIVIDUALLY AND D/B/A THE LAW OFFICES OF ART DULA, J. BUCKNER HIGHTOWER, AND THE ROBERT A. AND VIRGINIA HEINLEIN PRIZE TRUST, THROUGH ITS TRUSTEES ARTHUR M. DULA AND J. BUCKNER HIGHTOWER, Appellees**

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2014-65947**

# O P I N I O N

This is an appeal from a summary judgment dismissing a case due to a forum-selection clause providing for exclusive jurisdiction in the courts of the Isle of Man. The primary argument presented is that the forum-selection clause does not apply

because the parties seeking to enforce it either are not signatories or signed in a capacity different from the capacity in which they were sued. Under the plain language and defined terms of the contract, however, the forum-selection clause applies to the claims against these individuals regardless of capacity. Because the claims are within the scope of the valid forum-selection clause, and because its enforcement would not be unreasonable, unjust, contrary to a strong public policy of Texas, or seriously inconvenient for trial, we affirm the trial court's judgment.

## I. BACKGROUND

Appellant Takafumi Horie, who resides in Japan, is the billionaire founder of internet service provider LDH, Inc.[1] Appellee Arthur Dula is a Houston attorney who teaches "space law" and who is the sole proprietor of The Law Office of Art Dula. Dula's law firm employs appellee Anat Friedman, who also is an attorney. Dula and appellee J. Buckner Hightower additionally are co-trustees of The Robert A. and Virginia Heinlein Prize Trust. We refer to Dula, Friedman, and Hightower, individually and in each of these capacities, collectively as "the Dula Parties."

### A. The Space-Tourism Business

Pursuant to an agreement with Russian company NPO Machinostroenia ("NPOM"), Dula had the exclusive right to market Almaz space capsules and a Salyut space station. Together with Hiroshi "Hank" Yoshida of the Japanese company Astro Research Corporation ("Astro"), Dula met with Horie and LDH's vice president Noriaki Okubo to determine if Horie would be interested in a space-tourism business. Dula, Horie, and Okubo met in Japan in April 2005 and met with officials in Russia in June 2005 about the business.

---

[1] The company was previously known at various times as Livin' on the Edge; Livin' on the Edge Co., Ltd.; Edge Co., Ltd.; and Livedoor Co. Ltd. For clarity, we refer to it only as LDH.

2

Around the time of the meeting with Russian officials, Excalibur Almaz Ltd. ("Excalibur) was organized under the laws of the Isle of Man. Dula was Excalibur's chief executive officer, and he assigned his rights under the contracts with NPOM to Excalibur. The space-tourism business was to be conducted through Excalibur.

## B.     The Memorandum of Understanding

Horie's investment in the space-tourism business began when Dula presented Horie with (1) a private placement memorandum and (2) a memorandum of understanding ("the MOU") in October 2005. Under the MOU, Horie d/b/a Japan Space Dream would purchase 75% of Excalibur's shares for $49,003,000.00, payable in three tranches of $16,334,333.34 each. The initial payment was to be held in trust until, among other things, Excalibur's board elected two board members selected by Horie and accepted Horie's application for shares. Excalibur elected Horie and Okobo at Horie's request, and Horie became Excalibur's majority shareholder before the end of 2005.

## C.     The Side Agreement

Before Horie's second payment was due in January 2006, Horie was arrested in Japan for securities fraud. Under Horie's agreements with Excalibur, Excalibur could declare Horie's shares forfeit for his failure to make the required payments. Instead, Horie and Excalibur executed a "Side Agreement" that modified the MOU. Under the Side Agreement, Horie's ownership interest in Excalibur was reduced to 34% and Horie agreed to place his shares under the control of a third-party trustee acceptable to both Horie and Excalibur. The parties agreed that Okubo would be made "veto director" with the power to veto certain actions. The Side Agreement also specified that it and the original MOU were governed by Manx law and all differences arising out of the Side Agreement or the original MOU would be submitted to binding arbitration in the Isle of Man.

In fulfillment of the Side Agreement, Horie's shares, which had been held by an attorney in Japan, were transferred to a trust for which George Abbey served as trustee. Horie eventually made the required payments for his shares.

## D. The Deed

Horie also had been sued by LDH, and claims among Horie, Abbey, LDH, and Excalibur were resolved in June 2010 in a settlement agreement referred to as "the Deed." The Deed recites that Horie had agreed to subscribe for, and Excalibur had agreed to issue to Horie, 3,600 shares in Excalibur; that the Side Agreement settled some disputes, amended the MOU, and required Horie's shares to be put into a trust; that the shares were put into the trust with Abbey; and that Horie had assigned to LDH the right to instruct Abbey regarding those shares. In the Deed, the parties further agreed that LDH would instruct Abbey to consent to the redemption of the shares by Excalibur; that Excalibur would pay the redemption proceeds directly to LDH; and LDH's receipt of the funds would terminate the MOU, the Side Agreement, and the trust. The Deed's signatories included Horie in his individual capacity and Dula and Hightower as directors of Excalibur.

## E. The Lawsuit

After the Deed was performed, Horie sued the Dula Parties for breach of trust, constructive trust, resulting trust, fraud, statutory fraud, breach of fiduciary duty, monies had and received, and negligence. He alleged that Dula was his attorney and that Dula used the funds Horie invested in Excalibur to purchase four Almaz spacecraft capsules and two space stations from NPOM without disclosing that the purchase contract prohibited any modification of the hardware. As a result, the spacecraft could not be modified to be returned to flight. Horie sought an accounting, damages or rescission in the amount of his $49,003,000.00 original investment, punitive damages, and attorney's fees.

4

The Dula Parties moved to dismiss the suit based on a forum-selection clause in the Deed, which provides that "the Courts of the Isle of Man shall have exclusive jurisdiction in relation to any dispute or claim arising out of or in connection with this Deed or its subject matter, existence, negotiation, validity, termination or enforceability (including non-contractual disputes or claims)." The trial court initially denied the motion to dismiss, and we denied the Dula Parties' petition for writ of mandamus. *See In re Law Offices of Art Dula*, No. 14-15-00535-CV, 2015 WL 5825407 (Tex. App.—Houston [14th Dist.] Oct. 6, 2015, [mand. denied]) (per curiam) (mem. op.). In the meantime, the Dula Parties and others sued Horie in the Isle of Man.

After the unsuccessful mandamus proceeding, the Dula Parties again sought to enforce the forum-selection clause in the Texas district court, this time through a motion for summary judgment. In the same motion, and "to the extent necessary for enforcement" of the forum-selection clause, the Dula Parties also asked for an order finding that no attorney-client relationship ever existed between Horie and Dula. The trial court granted the motion without making the requested finding and dismissed the case without prejudice. Horie appeals.[2]

## II. STANDARD AND SCOPE OF REVIEW

In two issues and nine sub-issues, most of which overlap to some degree, Horie argues that the trial court erred in granting the traditional motion for summary judgment dismissing the case without prejudice based on the forum-selection clause.

To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that it is entitled to judgment

---

[2] During the pendency of this appeal, Horie also unsuccessfully sought a writ of prohibition to prevent the Dula Parties from taking steps to deprive this court of jurisdiction. *See In re Takafumi Horie*, No. 14-17-00943-CV, 2017 WL 6552100, at *1 (Tex. App.—Houston [14th Dist.] Dec. 21, 2017, orig. proceeding) (per curiam) (mem. op.).

5

as a matter of law. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). We review a summary judgment de novo, construing the evidence in the light most favorable to the non-movant by crediting evidence favorable to the non-movant if a reasonable juror could and disregarding contrary evidence unless a reasonable juror could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). To the extent we must review an unambiguous contract, we apply the de novo standard of review to that inquiry as well. *Id.*

## A. We Do Not Consider the Dula Parties' Reply Evidence or Horie's Surreply.

Because both sides also attempt to rely on material that we are not permitted to consider, we also clarify the scope of review. Except on leave of court, the movant's summary-judgment motion and evidence must be filed and served at least twenty-one days before the hearing, and the respondent's response and evidence must be filed and served seven days before the hearing. TEX. R. CIV. P. 166a(c). The Dula Parties filed a reply with supporting evidence three days before the hearing. Because the record does not show that the evidence attached to the reply was filed with leave of court, we do not consider it. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996); *Tex. Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, No. 14-16-00474-CV, __S.W.3d__, 2018 WL 2436924, at *6 (Tex. App.—Houston [14th Dist.] May 31, 2018, no pet.). For the same reason, we do not consider Horie's surreply and its attached evidence, which were filed nine days after the motion was submitted. *See Conte v. Ditta*, No. 14-02-00482-CV, 2003 WL 21191296, at *3–4 (Tex. App.—Houston [14th Dist.] May 22, 2003, no pet.) (mem. op.).

6

**B.     We Do Not Consider Horie's Second Amended Petition.**

Texas Rule of Civil Procedure 166a(c) requires the trial court to consider the pleadings "on file at the time of the hearing, or filed thereafter and before judgment with permission of the court."  TEX. R. CIV. P. 166a(c).  But, Texas Rule of Civil Procedure 63 requires a party to obtain leave of court to amend its pleading within seven days of the trial or thereafter.  *See* TEX. R. CIV. P. 63.  This rule applies to summary-judgment proceedings because they are trials within the meaning of this rule.  *See Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988).  Thus, Rule 63 requires a party to obtain leave of court to amend its pleading within seven days of the summary-judgment hearing or thereafter.  *See id.*  Leave must be granted unless it is shown that the filing will operate as a surprise to the opposing party.  *See id.*  If the amended pleading is filed before a summary-judgment hearing but within the seven-day window, the appellate court will presume that the trial court granted leave for the amendment and that the trial court considered this pleading if (1) the record is silent of any basis to conclude that the trial court did not consider the amended pleading, and (2) the opposing party has not shown surprise or prejudice.  *See id.*; *Thomas v. Allstate Ins. Co.*, No. 14-05-00293-CV, 2006 WL 2290840, at *2 n.3 (Tex. App.—Houston [14th Dist.] Aug. 10, 2006, no pet.) (mem. op.).  But, this presumption does not apply if the pleading is amended after the hearing.  *See Mensa-Wilmot v. Smith Int'l, Inc.*, 312 S.W.3d 771, 778–79 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Taylor v. Sunbelt Mgmt., Inc.*, 905 S.W.2d 743, 745 (Tex. App.—Houston [14th Dist.] 1995, no writ).

Here, Horie filed his second amended original petition more than two weeks after the summary-judgment hearing, and the record does not indicate that the trial court granted leave for the amendment or considered the amended pleading.  To the contrary, the trial court stated in the judgment, "The claims asserted by Plaintiff in

7

the First Amended Petition fall within the scope of the forum[-]selection clause." We accordingly do not consider the later pleading.

## C. We Do Not Consider Evidence That is Not Part of the Summary-Judgment Record.

Finally, each side has included material in the appendix to its appellate brief that is not part of the summary-judgment record presented to the trial court. We exclude this material from our consideration as well, and we do not address the arguments that are dependent on such material for support. *See Fryday v. Michaelski*, 541 S.W.3d 345, 352 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

## III. THE FORUM-SELECTION CLAUSE

Forum-selection clauses are presumptively valid and enforceable. *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (per curiam) (orig. proceeding). When deciding whether a forum-selection clause applies, a court performs "a common-sense examination of the claims and the forum-selection clause to determine if the clause covers the claim." *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 884 (Tex. 2010) (per curiam) (orig. proceeding) (quoting *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677 (Tex. 2009) (per curiam) (orig. proceeding)). If the clause covers the claim, then the clause generally will be enforced unless it is invalid due to fraud or overreaching, or unless (a) enforcement would be unreasonable or unjust, (b) enforcement would contravene a strong public policy of the forum where the suit was brought, or (c) the selected forum would be seriously inconvenient for trial. *See Laibe*, 307 S.W.3d at 316.

## A. The Clause Applies to Horie's Claims.

To determine whether a forum-selection clause applies, we begin with its language. *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 437 (Tex. 2017). The Deed's forum-selection clause states,

> Each Party irrevocably agrees that the Courts of the Isle of Man shall have exclusive jurisdiction in relation to *any dispute or claim* arising out of or *in connection with this Deed or its subject matter*, existence, negotiation, validity, termination or enforceability (including non-contractual disputes or claims).[3]

To determine whether the forum-selection clause applies to the claims in this case, we must identify the Deed's subject matter.

Among other things, the Deed dealt with "any Claims" by Horie or Japan Space Dream against members of the "Company Group." The "Company Group" was defined to mean Excalibur and "its Affiliates, shareholders, subsidiaries, employees, officers, directors, trustees, assigns, transferees, representatives, principals and agents," both individually and collectively. The "Company Group" includes its directors Dula and Hightower, each of whom signed the Deed in his capacity as a director of Excalibur.

The Deed defines "Claim" to mean

> a claim, potential claim, counterclaim, potential counterclaim, right of set-off, indemnity, liability, cause of action, right or interest *of any kind or nature whatsoever,* whether known or unknown, suspected or unsuspected, contingent or actual, however and whenever arising *and in whatever capacity* and jurisdiction . . . .[4]

The claims that are the subject matter of the Deed are not limited to claims against Dula and Hightower in their capacities as Excalibur's directors, because

---

[3] Emphasis added.
[4] Emphasis added.

"claim" is defined to include claims "of any kind" and "in whatever capacity." "Whatever" is a relative pronoun and determiner "used to emphasize a lack of restriction in referring to any thing or amount no matter what." NEW OXFORD AMERICAN DICTIONARY 1965 (Angus Stevenson & Christine Lindberg eds., 3d ed. 2010). Thus, the subject matter of the Deed includes any claims by Horie against Dula and Hightower, regardless of the nature of the claim or the capacity in which they could be sued.[5]

Because Horie's claims in this case are all "in connection" with the Deed's subject matter, we conclude that the forum-selection clause applies.

### 1. Horie's counterarguments based on the Deed's language

According to Horie, his claims are not governed by the forum-selection clause because the claims do not "arise from" the deed. The Deed, however, includes claims "in connection with" the Deed's subject matter, and Horie concedes that "connected to" is construed broadly.[6] *See In re NEXT Fin. Grp., Inc.*, 271 S.W.3d 263, 268 (Tex. 2008) (per curiam) (orig. proceeding); *see also Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 19–20 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (explaining that "arising out of or in connection with" is "broad language evidenc[ing] the parties' intent to be inclusive rather than exclusive").

---

[5] Horie does not distinguish between his claims against Dula and Hightower, on one hand, and his claims against Friedman, on the other; thus, we are not specifically called upon to address the claims against Friedman separately. Nevertheless, we note that the Deed defines "Affiliate" to include "any other person which directly or indirectly Controls, is Controlled by, or is under direct or indirect common control with [Excalibur] from time to time." Friedman is alleged to be an attorney at Dula's law firm, which is a sole proprietorship. Because Dula directly or indirectly controls both Excalibur and his law firm's employees—including Friedman—Friedman is an "Affiliate." As such, claims against her are claims against a member of the "Company Group" for the purpose of the forum-selection clause.

[6] Horie also asserts that he, Horie, has no enforceable rights under the Deed, under which he received nothing. But, under the Deed, Horie obtained releases and the termination of the MOU and Side Agreement, among other things.

He also maintains that the claims do not fall within the scope of the Deed because it was signed by Dula and Hightower in capacities other than those under which they are sued, but as we have just seen, the subject-matter of the Deed includes Horie's claims brought against Dula and Hightower in any capacity. Horie similarly points out that the Dula Parties are not named in the Deed; however, Excalibur is named in the Deed, and the Dula Parties fall within the definitions of "Company Group."

Horie further asserts that the Dula Parties did not argue that the "Law Office of Art Dula" or the "Robert A. and Virginia Heinlein Prize Trust" are related to the signatories. No such argument was necessary, because the law firm and the Heinlein Trust are not parties to this action. Horie alleged that Dula does business as "the Law Office of Art Dula," but the assumed name of a sole proprietorship is not a separate legal entity or even a different capacity of the individual sole proprietor. *See* TEX. R. CIV. P. 28; *CA Partners v. Spears*, 274 S.W.3d 51, 70 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). A trust also is not a legal entity, and a suit against it must be brought against the trustee. *Ray Malooly Tr. v. Juhl*, 186 S.W.3d 568, 570 (Tex. 2006) (per curiam).

The parties to the suit are four individuals: Horie, as the plaintiff, and the defendants Dula, Hightower, and Friedman. Horie sued Dula and Hightower in both their individual capacities and in their representative capacities as trustees of the Heinlein Trust. Because the forum-selection clause applies to Horie's claims against Dula and Hightower "in whatever capacity," it applies to Horie's claims against them as trustees.

## 2.     *Horie's counterarguments based on alleged questions of fact*

Most of Horie's brief is dedicated to the argument that the Dula Parties failed to conclusively establish that Dula was never his attorney.  We conclude that this is not a genuine issue of material fact.

A fact is "material" if it affects the ultimate outcome of the lawsuit under the governing law. *Pierce v. Wash. Mut. Bank*, 226 S.W.3d 711, 714 (Tex. App.—Tyler 2007, pet. denied), *abrogated on other grounds by Lujan v. Navistar*, No. 16-0588, __S.W.3d__, 2018 WL 1974473, at \*5 (Tex. Apr. 27, 2018); *Rayon v. Energy Specialties, Inc.*, 121 S.W.3d 7, 11 (Tex. App.—Fort Worth 2002, no pet.); *Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  As we have seen, the subject-matter of the Deed were the "Claims" against the "Company Group."  The Company Group includes the Dula Parties, and "Claims" include all claims of "any kind or nature whatsoever," "whenever arising and in whatever capacity."  Thus, the claims to which the forum-selection clause applies include claims against the Dula Parties as attorneys and trustees.  Whether Dula was Horie's attorney and when the relationship, if any, ended, remain for litigation between the parties.

## B.     The Forum-Selection Clause Is Not Claimed to be the Result of Fraud or Overreaching.

Horie did not argue at trial, nor does he argue on appeal, that the Deed or its forum-selection clause was the result of fraud or overreaching.

## C.     Enforcement Would Not Be Unreasonable or Unjust.

Horie contends that enforcement of the forum-selection clause would be unreasonable or unjust because virtually all of the witnesses are located in Texas and that Dula performed most of the work at issue in Texas.  Horie does not identify these witnesses and he produced no evidence in support of this contention.  *Cf. In re*

12

*ADM Investor Servs., Inc.*, 304 S.W.3d 371, 375 (Tex. 2010) (orig. proceeding) (holding conclusory statements insufficient to establish inconvenience). Dula and Hightower reside in Texas, but both are directors of a company organized under the laws of the Isle of Man and located in the Isle of Man. Horie and Okubo are residents of Japan, and Yoshida works for a Japanese company. The other companies involved in the case are two Japanese companies (LDH and Astro) and a Russian company (NPOM). Finally, the various attorneys that Dula contends represent Horie maintain offices in Japan and in California. The location of all of these witnesses were known to Horie when he signed the Deed containing the forum-selection clause.

Horie similarly asserts that the suit will be governed by Texas law, but that, too, is far from clear. The Deed, the Side Agreement, and the MOU (as amended by the Side Agreement) all contain provisions requiring the application of Manx law. Significantly, the question of whether Horie's claims have been released will be decided under the laws of the Isle of Man. This opinion does not control that issue.

Horie additionally maintains that the application of a forum-selection clause specifying a jurisdiction outside Texas is unreasonable or invalid as applied to claims against a Texas attorney. In support of this position, he cites *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 699 (Tex. 2000), in which the Supreme Court of Texas stated, "Contracts between attorneys and their clients negotiated during the existence of the attorney-client relationship are closely scrutinized" because "there is a presumption of unfairness and invalidity attaching to such contracts."

As the Dula Parties have pointed out, there is no affirmative evidence that Dula was Horie's attorney in 2010. Although Horie and Okubo swore that Dula performed legal work for Horie as late as 2008, when the Side Agreement was

13

executed, they did not contend that Dula represented Horie in connection with the later negotiation and execution of the 2010 Deed. Dula attested that Horie was represented in connection with the Deed by Mikio Tanaka, an attorney with City-Yuwa Partners in Tokyo, and Horie does not dispute this evidence. Nevertheless, there is some evidence that Dula represented Horie at an earlier date and no evidence that Dula terminated the relationship before the Deed was executed. Because we construe the evidence in Horie's favor unless reasonable jurors could not, we assume, without deciding, that Dula and Horie continued to have an attorney-client relationship of some sort in 2010, even though the relationship did not extend to representing Horie in connection with the Deed. We accordingly scrutinize the forum-selection clause closely.

An attorney may enter into a fair and valid contract with a client. For example, the Texas Disciplinary Rules of Professional Conduct permit an attorney to enter into a business transaction with a client if (1) the terms are fair, reasonable, and fully disclosed in a manner that can be reasonably understood by the client; (2) the client has a reasonable opportunity to seek the advice of independent counsel; and (3) the client consents in writing. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.08(a).[7] Here, the parties' business dealings and the alleged attorney-client relationship focused almost entirely on establishing Excalibur as a space-tourism business, and the forum-selection clause calls for claims to be litigated in the forum where Excalibur was created and has its principal place of business. The forum-selection clause is unambiguous, as is the definition of the "claims" to which it applies. The

---

[7] *See Hogg v. Lynch, Chappell & Alsup, P.C.*, No. 08-16-00305-CV, –S.W.3d–, 2018 WL 2077668, at *12 (Tex. App.—El Paso May 4, 2018, no pet.) (consulting the Texas Disciplinary Rules of Professional Conduct when determining whether a fee agreement was reasonable because the Rules help a court to "discern the policies and protections embodied in them as an aid in deciding questions of attorney civil liability" (quoting *Gillespie v. Hernden*, 516 S.W.3d 541, 547 (Tex. App.—San Antonio 2016, pet. denied))).

Deed's recitals show that it was negotiated for over six months, and it is undisputed that Horie was represented in this matter by independent counsel. *Cf. id.*, cmt. 2 (recommending that attorney-client business transactions be reviewed by independent counsel). Horie is a sophisticated businessman, and in signing the Deed, Horie expressly acknowledged that its terms had been negotiated on an arm's-length basis; that he had full opportunity to have his independent counsel explain the Deed's terms and effect; and that he entered into the Deed "freely, knowingly and voluntarily, free from duress of any kind." *Cf. id.* Rule 1.04, cmt. 8 (contract "negotiated at arm's-length with an experienced business client would rarely be subject to question"). Horie does not argue that the forum-selection clause was the product of fraud or overreaching. *See In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008) (per curiam) (orig. proceeding) (explaining that even fraudulent inducement will not bar enforcement of an arbitration or forum-selection clause "unless the specific clause was the product of fraud or coercion" (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 134–35 (Tex. 2004) (orig. proceeding)); *In re Longoria*, 470 S.W.3d 616, 630 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding) ("The fraud or overreaching in question must involve the negotiation of the forum-selection clause itself." (citing *Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 266–67 (Tex. App.—Austin 2010, pet. dism'd)). Under these circumstances, the forum-selection clause and its enforcement are not unreasonable, unfair, or invalid. *Cf. Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 265 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (fee agreement not unfair where client was sophisticated, terms were understood, and agreement was negotiated at arm's length through independent counsel).

In support of his assertion to the contrary, Horie also cites *Falk & Fish, L.L.P. v. Pinkston's Lawnmower & Equip., Inc.*, 317 S.W.3d 523, 529 (Tex. App.—Dallas

2010, no pet.). The case does not support Horie's position. In *Falk & Fish*, an attorney licensed in both Texas and North Carolina traveled to North Carolina where the attorney agreed to represent a small North Carolina company in a North Carolina court. *Id.* at 525. Six months later, the attorney gave the company the representation agreement he had drafted. *Id.* at 528. The agreement contained the clause, "the applicable courts of Dallas, Texas shall be the *for a* [sic] for all attorney-client disputes." *Id.* at 525. The *Falk & Fish* court stated that the company president who signed the agreement was not a "sophisticated and experienced client" and that there was no evidence that the agreement was negotiated. *Id.* at 529. Under those circumstances, the court held that the attorney had the burden to ensure that "the contract clearly stated any terms that diverged from [the client's] expectations." *Id.* The court reasoned that due to a typographical error, the forum-selection clause was not "clear and unequivocal." *Id.* at 528. Because the attorney failed in his burden to clearly state that claims against him would be resolved in a Texas forum, the court held both that the clause was unenforceable and that enforcement would be unreasonable and unjust.

The facts in this case cannot be compared to those in *Falk & Fish*. Whereas the client in *Falk & Fish* was unsophisticated and inexperienced, the client in this case is a sophisticated entrepreneur. The contract in *Falk & Fish* was not negotiated; the contract in this case was negotiated for over six months. The client in *Falk & Fish* was not represented by independent counsel; Horie was. And, whereas the forum-selection clause in *Falk & Fish* omitted the word "forum," the forum-selection clause in this case plainly states exactly what it means.

Even under close scrutiny, the evidence establishes that the forum-selection clause's terms and enforcement are fair, reasonable, and just.

16

**D. Enforcement Does Not Contravene a Strong Public Policy of Texas.**

Horie avers that Texas has a strong public policy of protecting the public from attorneys who improperly receive client funds. In support of this argument, he cites *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214 (Tex. 2017). Horie does not, however, explain why *Parker* mandates reversal in this instance.

In *Parker*, the Supreme Court of Texas stated that the elements of a breach-of-fiduciary-duty claim generally are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages. *Id.* at 220. The court then explained that in a client's breach-of-fiduciary-duty claim against its attorney, the client nevertheless can obtain the equitable remedy of fee forfeiture without showing that the attorney's breach caused the client damages. *See id.* at 221. Because Horie had not sought fee forfeiture before the motion for summary judgment was submitted—and because the Dula Parties did not seek summary judgment on liability in any event—*Parker* does not affect our analysis of the forum-selection clause's enforceability. Enforcing the forum-selection clause is not counter to the public policy of Texas.

Horie also asserts that the forum-selection clause cannot be enforced "because the court would have to treat the Deed as an agreement between Horie and his attorney. Such agreements to choose another forum, especially in a foreign country thousands of miles away, are presumptively invalid." We already have discussed Horie's argument that the forum-selection clause is unfair, unreasonable, or invalid, and this argument fails for the same reasons. Moreover, Horie's assertion that the forum-selection clause requires litigation "in a foreign country thousands of miles away" raises the question, "away from where?" Presumably, Horie is referring to the distance from Japan, where he resides and where his relationship with Dula

began. While it is true that the courts of the Isle of Man are thousands of miles away from Japan, so are the courts of Houston, Texas. Just as Horie voluntarily chose to litigate in Houston, Texas despite the distance, so too did he voluntarily agree to litigation in the Isle of Man.

Under the same heading, Horie asserts that the forum-selection clause "is effectively a prospective limitation on a lawyer's fiduciary liability." Here, too, Horie does not explain his reasoning. We presume that the substantive laws of the Isle of Man are the same as those of Texas,[8] and thus, that a claim for breach of fiduciary duty is a cognizable claim on the Isle of Man as it is in Texas. The forum-selection clause does not purport to limit liability for breach of fiduciary duty—and it certainly does not do so prospectively. By the time Horie executed the Deed, he had agreed to purchase 75% of the stock in Excalibur for $49,003,000.00; to place the shares in a trust; and to grant LDH the power to control the trust. With the execution of the Deed, Horie agreed that Excalibur would redeem Horie's shares and pay the redemption price directly to LDH, and that the MOU, the Side Agreement, and the trust would terminate. Thus, the execution of the Deed ended Horie's interest in Excalibur without the return of his investment. Because the conduct forming the basis of Horie's complaints occurred upon or before the Deed's execution, any limitation of liability would not be "prospective."

## E.    The Isle of Man Is Not Seriously Inconvenient for Trial.

Horie's public-policy arguments also could be considered as arguments that the Isle of Man is seriously inconvenient for trial. Nevertheless, the inconvenience of litigating in the Isle of Man was foreseeable when Horie entered into the Deed containing the forum-selection clause. *See In re AIU Ins. Co.*, 148 S.W.3d 109, 111–

---

[8] *See Brown v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 894 n.20 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

13 (Tex. 2004) (orig. proceeding). Despite this foreseeability, Horie acknowledged that he knowingly and voluntarily agreed to the Deed's terms. We accordingly find these arguments to be without merit.

## IV. HORIE'S REMAINING ARGUMENTS

Because Horie's remaining arguments do not readily fit into the framework for analyzing the applicability of a forum-selection clause, we address each of them separately.

### A. Arguments About the Appropriate Disposition

Horie asserts that if the Dula Parties' summary-judgment evidence was insufficient, then the trial court should have denied the motion rather than dismissing the case without prejudice. Because we hold that the Dula Parties' evidence established that Horie's claims against them fall within the scope of the Deed's fair and valid forum-selection clause, the trial court did not err in dismissing the case without prejudice. *Compare Ritchey v. Vasquez*, 986 S.W.2d 611, 612 (Tex. 1999) (per curiam) (dismissal with prejudice is a final ruling on the merits) *with Deep Water Slender Wells, Ltd. v. Shell Int'l Exploration & Prod., Inc.*, 234 S.W.3d 679, 695 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (dismissal based on a forum-selection clause is not a ruling on the merits).

Under the same heading, Horie represents that the trial court concluded that the Dula Parties had not met their summary-judgment burden but nevertheless ordered the transfer of the case to a foreign country. Both of these assertions are based on false premises. The trial court determined that the Dula Parties had met their summary-judgment burden to prove that the forum-selection clause is enforceable against Horie; thus, the trial court granted the motion. Horie's contrary assertion is based on the statement in the trial court's final judgment, "[T]he Court

19

makes no finding as to whether Dula was Horie's attorney." This statement has no legal significance because findings of fact have no place in a summary-judgment proceeding. *Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994) (per curiam). And, the trial court did not order the case transferred; as Horie himself has pointed out, the trial court dismissed the case without prejudice.[9]

## B.    Evidentiary Arguments

Horie argues that the trial court erred in overruling his objection to the "First Witness Statement of Arthur McKee Dula," which was one of the documents the Dula Parties offered in support of their summary-judgment motion. Horie objected to the witness statement on the ground that it does not comply with Texas Civil Practice and Remedies Code section 132.001. He also argues that one paragraph in Dula's Texas declaration incorporates hearsay.[10] We review evidentiary rulings for abuse of discretion. *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 728 (Tex. 2016).

As to Horie's objection that the witness statement does not comply with Texas Civil Practice and Remedies Code section 132.001, Dula incorporated his witness statement into a later declaration he signed under penalty of perjury pursuant to section 132.001. In this Texas declaration, Dula states that he has personal knowledge of the facts set forth in the Texas declaration, and that the facts are all true and correct. This declaration substantially complies with the Texas unsworn-

---

[9] Horie explains that this argument is based on the trial court's statement, "The case having been sent to the Isle of Man, all further issues should be resolved there." This appears to be a reference to the case that the Dula Parties, Excalibur, and others filed against Horie in a Manx court. The case was "sent" to the Isle of Man by the plaintiffs in that action.

[10] Horie's objections are not in the record, but we can identify them from his proposed order. Although Horie complains on appeal that Dula's witness statement incorporates hearsay, his hearsay objection in the trial court was raised only to paragraph 9 of Dula's Texas declaration (which is identical to paragraph 9 of Dula's witness statement). We assume that Horie intended to refer in his appellate brief to his hearsay objection to Dula's Texas declaration, for no hearsay objection to Dula's witness statement has been preserved for review. *See* Tex. R. App. P. 33.1(a).

declaration statute, and thus, it has the same effect as an affidavit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 132.001(a) ("[A]n unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute or required by a rule . . . ."); *id.* § 132.001(d) ("[A]n an unsworn declaration made under this section must include a jurat in substantially the following form . . . ."); *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 813 (Tex. App.—El Paso 2014, no pet. ) ("The operative part of the jurat is the portion subjecting the declarant to the penalty of perjury."). Indeed, in quoting from Dula's witness statement, Horie himself characterizes it as a statement "under oath."

As to the paragraph of Dula's Texas declaration that allegedly incorporates hearsay, that paragraph concerns Dula's authentication of an October 2005 email exchange concerning a California attorney's proposed changes to the MOU. Because we do not address the question of whether Dula acted as Horie's attorney in October 2005 or in connection with the original MOU, the email does not affect our disposition of this appeal. Thus, even if the trial court abused its discretion in overruling the objection, the error would be harmless.

## C.    Arguments Relying on Extraneous Material

Under the heading, "Appellees Failed to Prove the [Manx] Court Has Jurisdiction Over Horie's Claims Against Dula For His Acts As a Texas Lawyer," Horie additionally avers that after summary judgment was rendered dismissing the case, the Manx court construed the Texas district court's judgment to mean that Horie failed to prove that Dula acted as his attorney at the relevant time. Horie contends that as a result of the Manx court's interpretation of the district court's judgment, the judgment is, in effect, a dismissal with prejudice.

This argument rests entirely on material that is not part of the summary-judgment record; in fact, the cited material did not exist when summary-judgment

21

was rendered, and appears solely in the appendix to Horie's appellate brief. We accordingly do not consider it. *See* TEX. R. APP. P. 34.1 (describing contents of appellate record); *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("[W]e cannot consider documents attached as appendices to briefs and must consider a case based solely upon the record filed.").

## D.    Argument About the Appropriate Procedural Vehicle

Finally, Horie argues that a motion for summary judgment is an improper procedural device for seeking enforcement of a forum-selection clause. We do not consider this argument because Horie did not raise this ground in his summary-judgment response. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979); *Norris v. Tex. Dev. Co.*, 547 S.W.3d 656, 662 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

## V. CONCLUSION

The Deed traces the course of Horie's investment in Excalibur. It recites that Horie agreed in the MOU to purchase shares in Excalibur, and that in the Side Agreement, Horie agreed to modify the MOU and to place his shares in trust. The Deed recounts that Horie transferred control of the trust to LDH, and finally, expresses Horie's agreement to the mutual release of claims and the termination of the MOU, the Side Agreement, and the trust in exchange for allowing Excalibur to redeem the shares from LDH.

Horie's claims in this case are efforts to turn back the clock and receive his original investment back, and, as such, his claims are, as a matter of law, "in connection with" the subject-matter of the Deed. Regardless of whether Dula ever performed any legal work for Horie, it is undisputed that he did not do so in

22

connection with the Deed.  Finding Horie's arguments to avoid enforcement of the Deed's forum-selection clause to be without merit, we overrule the issues presented and affirm the trial court's judgment dismissing Horie's claims without prejudice.


/s/    Tracy Christopher
Justice


Panel consists of Chief Justice Frost and Justices Christopher and Jamison.