**Affirmed and Majority and Concurring Opinions filed April 16, 2019.**




**In The**

**Fourteenth Court of Appeals**

**NO. 14-17-00717-CV**

**POLARIS GUIDANCE SYSTEMS, LLC, Appellant**

**V.**

**EOG RESOURCES, INC., Appellee**

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-29381**

# M A J O R I T Y O P I N I O N

This is a summary judgment case involving the construction of an unambiguous contract contained in multiple writings. Appellant, Polaris Guidance Systems, LLC, sued appellee, EOG Resources, Inc., alleging breach of contract and promissory estoppel causes of action. EOG Resources moved for summary judgment, which the trial court granted. Finding no error, we affirm.

## BACKGROUND

EOG Resources is in the business of "exploring for and producing oil, gas and other hydrocarbons in the onshore and offshore areas of the Continental United States." Polaris develops software, which it sells to companies such as EOG Resources. Polaris also provides maintenance and other services related to its software sales.

In early 2014, Polaris and EOG Resources began negotiations regarding the possible licensing of Polaris software, the purchase of related goods, and the provision by Polaris of certain updating and maintenance services in connection with the software. EOG Resources was interested in the Polaris software to monitor its oil and gas wells. Polaris and EOG Resources initially signed a Master Service Agreement (MSA) on February 11, 2014. The MSA provided that it

> shall control and govern all Services performed by [Polaris] for [EOG Resources] under subsequent oral or written work orders, purchase orders or other similar documents issued by or accepted by [EOG Resources] ('Work Order')." Any agreements or stipulations in any such Work Order or other instrument used by [Polaris] not in conformity with the terms and provisions of this Agreement, or that purport to add to the rights of [Polaris] or to restrict the rights of [EOG Resources], shall be null and void. No waiver, modification or amendment of any of the terms, provisions or conditions herein shall be effective unless said waiver, modification or amendment shall be in writing and signed by authorized representatives of [EOG Resources] and [Polaris]. . . . No representative of [EOG Resources] has authority to waive any of the terms, conditions or provisions hereof other than an officer with the rank of Vice President or higher, acting with express authority from the Board of Directors.

The MSA defined "Services" as "software development and product sales of same and any ancillary functions related thereto." The MSA also provided that it

> does not obligate [EOG Resources] to order Services from [Polaris], nor does it obligate [Polaris] to accept orders for Services from [EOG

> Resources], but it, together with the commercial specifications and technical parameters in any applicable Work Order, shall define the rights and obligations of [EOG Resources] and [Polaris] during the term thereof and will continue to govern such Services until they have been completed by [Polaris] and accepted by [EOG Resources]. Notwithstanding the foregoing, [EOG Resources] may terminate any Work Order at any time upon written notice, with or without cause, and no amount shall be owed except for Services properly performed prior to termination.

Subsequently, EOG Resources and Polaris signed two additional documents. They initially signed the Polaris/EOG License Agreement, dated March 20, 2014, wherein Polaris granted EOG Resources a perpetual, non-transferable, license to certain specified Polaris software. That same day, Polaris signed a Polaris Quote, which EOG Resources signed on March 24, 2014. The Polaris Quote provided that "this transaction shall be governed by the Polaris License Agreement and the Master Service Agreement by and between Polaris Guidance Systems, LLC and EOG Resources, Inc." Pursuant to these agreements, at the costs specified therein, EOG Resources received a perpetual license to the specified Polaris software; purchased related equipment; retained Polaris's maintenance services on an annual basis; and agreed to pay an extra fee each year for the use of a backup copy of the software. EOG Resources paid Polaris more than $350,000, including a lump sum payment of $150,000 for the software license and the right to use the software in perpetuity.

EOG Resources paid each Polaris invoice until 2016. In 2016, EOG Resources decided to change the system it employed to monitor its oil and gas wells. As a result, EOG Resources notified Polaris that it intended to reduce the services it obtained from Polaris. Polaris responded that EOG Resources was locked into a perpetual service arrangement and could never terminate the services and related annual payment obligations to Polaris.

On May 5, 2016, Polaris's counsel wrote EOG Resources, again contending that EOG Resources was obligated to pay for Polaris's maintenance and update services forever. Polaris demanded accelerated payment in an amount purportedly based on performance of the contract for a period of ten years. On November 1, 2016, EOG Resources sent a letter notifying Polaris a second time that it was terminating Polaris's services. EOG Resources included with the letter a final payment for "services performed prior to termination," along with all equipment it had obtained from Polaris as part of their deal.

Polaris eventually filed suit against EOG Resources alleging causes of action for breach of contract and promissory estoppel. Polaris also sought a temporary injunction. Polaris alleged that EOG Resources breached the license agreement when it chose to terminate. EOG Resources filed an answer and a counterclaim seeking a declaratory judgment that EOG Resources had the contractual right under the MSA to terminate Polaris's services. EOG Resources eventually filed a motion for summary judgment seeking a declaration regarding its right to terminate the license agreement pursuant to the MSA, as well as a ruling against Polaris on all of its claims against EOG Resources. The trial court granted EOG Resources' motion in its entirety. In addition to denying all of Polaris's claims against EOG Resources, the trial court declared "that EOG [Resources] has the right to terminate its agreement with Polaris and that EOG [Resources] exercised such authority and terminated the agreement and paid all sums due and owing to Polaris." Polaris filed a motion for new trial, which the trial court denied with a written order. This appeal followed.

## ANALYSIS

Polaris challenges the trial court's summary judgment in three issues.[1] While all three of Polaris's issues contend the trial court erred in its construction of the three writings underlying the software transaction between Polaris and EOG Resources, we need only reach the first two.

### I. Standard of review and contract interpretation

A declaratory judgment granted on a traditional motion for summary judgment is reviewed de novo. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015). A motion for summary judgment is properly granted if the movant establishes that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Gastar Exploration Ltd. v. U.S. Specialty Ins. Co.*, 412 S.W.3d 577, 582 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

A contract is unambiguous if it can be given one certain or definite legal interpretation. *Lane-Valente Indus. (Nat'l), Inc. v. J.P. Morgan Chase Bank, N.A.*, 468 S.W.3d 200, 205 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The construction of an unambiguous contract is a question of law, which we review de novo. *Kachina Pipeline Co.*, 471 S.W.3d at 449. In construing an unambiguous contract, an appellate court's primary goal is to ascertain the true intentions of the parties as expressed in the instrument. *J. M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Ordinarily, the writing alone is sufficient to express

---

[1] Although Polaris references the trial court's denial of its motion for new trial in its Statement of the Case and Summary of the Argument, it did not include an issue or arguments challenging the trial court's denial of its motion for new trial. It is therefore not at issue in this appeal. *See* Tex. R. App. P. 38.1(i); *Birnbaum v. Law Offices of David G. Westfall*, 120 S.W.3d 470, 477 (Tex. App.—Dallas 2003, pet. denied) (concluding appellant's brief presented nothing for the appellate court to review because his issue did not contain argument supported by citations to record and legal authority).

the parties' intentions, because it is the objective, not subjective, intent that controls. *See Matagorda Cty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex. 2006). When construing a contract, we give contract terms their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). We construe contracts from a utilitarian standpoint, bearing in mind the particular business activity sought to be served, and we avoid, when possible and proper, a construction that is unreasonable, inequitable, or oppressive. *Frost Nat'l Bank v. L & F Distrib., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). We examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *J. M. Davidson, Inc.*, 128 S.W.3d at 229. This is true even when, like here, there are multiple writings at issue. It is well established that all instruments pertaining to the same transaction may be read together to ascertain the parties' intent as expressed in the instruments, even if the instruments were executed at different times and they do not refer to each other. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000).

Whether a contract is ambiguous is a question of law for the court to decide by examining the agreement as a whole in light of the circumstances present when the contract was entered. *Lane-Valente Indus. (Nat'l), Inc.*, 468 S.W.3d at 205. A contract is ambiguous if it is susceptible of more than one reasonable interpretation. *Id.* The fact that the parties disagree about a contract's meaning does not necessarily show that it is ambiguous. *Id.* In addition, parol evidence is not admissible for the purpose of creating an ambiguity. *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 258 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). A court may, however, conclude that a contract is ambiguous even

though the parties did not plead ambiguity or argue on appeal that it is ambiguous. *See Lane-Valente Indus. (Nat'l), Inc.*, 468 S.W.3d at 205; *see also Phil Watkins, P.C. v. The Krist Law Firm*, No. 14-02-00291-CV, 2003 WL 21786173, at *3 (Tex. App.—Houston [14th Dist.] Aug. 5, 2003, pet. dism'd) (mem. op.) (stating that agreement between parties that contract at issue was not ambiguous does not prevent appellate court from concluding that it is ambiguous). Contract ambiguity can be divided into two categories: patent or latent. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 765 (Tex. 2018). A patent ambiguity is evident on the face of the contract while a latent ambiguity occurs when a contract, unambiguous on its face, is applied to the subject matter, and the ambiguity appears by reason of a collateral matter. *Id.* Parol evidence is not admissible to reveal a latent ambiguity, it must instead be revealed when the contract is read in context of the surrounding circumstances.[2] *Id.* When an agreement is ambiguous, the parties' intent becomes a fact issue. *Kachina Pipeline Co.*, 471 S.W.3d at 449. Summary judgment is inappropriate when a contract is ambiguous. *Lane-Valente Indus. (Nat'l), Inc.*, 468 S.W.3d at 205.

## II. We do not consider Polaris's exhibit attached to its motion for new trial in resolving its complaints regarding the trial court's summary judgment.

Throughout its arguments challenging the trial court's summary judgment, Polaris references an exhibit it attached only to its motion for new trial. This exhibit, consisting of excerpts from depositions taken after the summary judgment hearing, was not part of the summary judgment record. We therefore do not consider it in resolving Polaris's appellate issues. *See Horie v. Law Offices of Art*

---

[2] The classic example of a latent ambiguity is when a contract requires a delivery to the green house on Pecan Street, but surrounding circumstances reveal there are two green houses on Pecan Street. *URI, Inc.*, 543 S.W.3d at 765.

*Dula*, 560 S.W.3d 425, 432 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (excluding from appellate consideration evidence that was "not part of the summary-judgment record presented to the trial court").

**III. The agreements at issue here are not ambiguous.**

While Polaris cites ambiguity cases in the legal standard section of its opening brief, and then attempts to rely on parol evidence in its various arguments, it does not affirmatively argue in its first two issues that the documents underlying the software transaction at issue here are ambiguous. Indeed, Polaris argues that they should be enforced as written. For example, Polaris states, in the conclusion to its first issue, that, "because the language of the "Termination" section [of the Polaris/EOG License Agreement] is certain or definite in its meaning, and [EOG Resources] failed to obtain [Polaris's] written consent to terminate the contract, in whole or in part, there exists a genuine issue of material fact in which [EOG Resources'] Motion for Final Summary Judgment should have been denied as a matter of law." Similarly, Polaris concludes its second issue with the following argument: "Because the language of the merger clause is certain or definite in its meaning, and the MSA provides for written waiver, modification, or amendment of its terms, there exists a genuine issue of material fact in which [EOG Resources'] Motion for Final Summary Judgment should have been denied as a matter of law." While Polaris does assert in its third issue that a latent ambiguity exists in the agreement, it does not identify the alleged latent ambiguity, nor does it establish the collateral matter making the alleged latent ambiguity apparent. *See URI, Inc.*, 543 S.W.3d at 765 (describing latent ambiguity). Polaris instead relies on its proffered parol evidence. Parol evidence, however, cannot be used to create a latent ambiguity. *Id.* Because the documents at issue in this dispute can be given a certain or definite meaning, we conclude they are not ambiguous. *Chrysler, Ins.*

*Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex. 2009).

## IV. The trial court did not err when it granted EOG Resources' motion for summary judgment.

Polaris contends in its second issue on appeal that the Polaris/EOG License Agreement superseded the MSA as a result of a merger clause found in the Polaris/EOG License Agreement.[3] Polaris then goes on to make two separate arguments. First, Polaris argues that the MSA is simply inapplicable to the software transaction because it does not reference the Polaris/EOG License Agreement. Second, Polaris argues that construing the documents together would render the merger clause found in the Polaris/EOG License Agreement meaningless. We disagree with both arguments.

The Texas Supreme Court has held that "agreements executed at the same time, with the same purpose, and as part of the same transaction, are construed together." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004). A court may determine, as a matter of law, that multiple documents comprise a written contract. *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 840. As explained below, we conclude that is appropriate here.

Initially, the parties executed the MSA. The MSA defined "Services" as "software development and product sales of same and any ancillary functions related thereto." The MSA then provides that it "shall control and govern all

---

[3] The merger clause provides as follows:

> Each party hereto acknowledges that there are no agreements or understandings, written or oral, between them with respect to the subject matter hereof, except as set forth herein, that this Agreement supersedes and replaces any and all such prior agreements or understandings to the extent in conflict herewith, and that this Agreement contains the entire agreement between them with respect to the subject matter hereof.

Services performed by [Polaris] for [EOG Resources], under subsequent oral or written work orders, purchase orders or other similar documents issued by or accepted by [EOG Resources]." The MSA thus envisioned the issuance of additional documents, such as work orders or purchase orders, which would set out specific details of the contemplated software transaction. Within a short time, the parties executed the Polaris/EOG License Agreement and the Polaris Quote. The Polaris Quote expressly states that "this transaction shall be governed by the Polaris License Agreement and the Master Service Agreement by and between Polaris Guidance Systems, LLC and EOG Resources, Inc." We conclude that these documents demonstrate a clear intent by the parties that their software transaction was to be governed by the MSA, the Polaris/EOG License Agreement, and the Polaris Quote. We therefore must construe them together. *Castillo Info. Tech. Servs., LLC v. Dyonyx, L.P.*, 554 S.W.3d 41, 49 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Because the documents must be construed together, the Polaris/EOG License Agreement does not supersede the MSA. Reaching this conclusion does not render the Polaris/EOG License Agreement's merger clause meaningless because it specifically states that there are no other agreements dealing with the "subject matter hereof," the licensing of Polaris software, and that it supersedes and replaces only prior agreements that conflict with it. We conclude that there is no conflict with the MSA because the Polaris/EOG License Agreement provides additional methods to terminate the relationship that were not contained in the MSA. *See id.* (rejecting argument that multiple documents should not be construed together because doing so would render various terms in one of the documents meaningless). We overrule Polaris's second issue.

Polaris argues in its first issue that the trial court erred when it granted EOG Resources' motion for summary judgment based on the thirty-day written notice

termination provision in the MSA. In Polaris's view, the termination provisions in the Polaris/EOG License Agreement totally supplanted the MSA's termination provision. Having already decided that the Polaris/EOG License Agreement did not supersede the MSA, we conclude that the thirty-day written notice termination provision found in the MSA remained in effect. Because it is undisputed that EOG Resources gave Polaris thirty days' written notice of termination, we conclude that the trial court did not err when it granted EOG Resources' motion for summary judgment. *See Benavides v. Benavides*, No. 04-11-00252-CV, 2011 WL 5407493, at *1 (Tex. App.—San Antonio Nov. 9, 2011, pet. denied) (mem. op.) ("When the facts surrounding performance of an unambiguous contract are undisputed, the determination of whether a party has breached the contract is a question of law for the court and not a question of fact for the jury."). We overrule Polaris's first issue.[4]

[4] Polaris's third issue challenges an alternative ground for summary judgment EOG Resources included in its motion. Because we have already determined that the trial court did not err when it granted EOG Resources' motion for summary judgment on the ground that the MSA granted EOG Resources the ability to cancel the agreement with Polaris upon giving thirty-days written notice, we need not address Polaris's third issue challenging the alternative ground. *See* Tex. R. App. P. 47.1; *Ammerman v. Ranches of Clear Creek Cmty. Ass'n*, 562 S.W.3d 622, 640, n.5 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("Because we affirm the trial court's grant of summary judgment on limitations grounds, we need not address the alternative grounds asserted by the Wilsons and the Association in their motions for summary judgment on these claims.").

## Conclusion

Having overruled each of Polaris's issues necessary for final disposition of the appeal, we affirm the trial court's judgment. See Tex. R. App. P. 47.1.

/s/ Jerry Zimmerer
Justice

Panel consists of Justices Jewell, Zimmerer, and Spain (Spain, J., concurring).