# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## ON MOTION FOR REHEARING

---

## NO. 03-22-00708-CV

---

**Melanie Mock, Appellant**

**v.**

**St. David's Healthcare Partnership, LP, LLP, a Texas Limited Liability Partnership,
Appellee**

---

**FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-21-001108, THE HONORABLE TIM SULAK, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

We withdraw our previous opinion issued on February 21, 2025, and substitute the following opinion in its place. We deny appellee's motion for rehearing.

Melanie Mock filed suit against St. David's Healthcare Partnership, LP, LLP, a Texas Limited Liability Partnership (the Hospital), asserting claims of breach of contract; of violations of the Deceptive Trade Practices Act (DTPA), *see* Tex. Bus. & Com. Code §§ 17.41–63; and for declaratory relief, *see* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011 (UDJA), based on allegations that the Hospital unlawfully charged her an undisclosed fee related to emergency department services. Mock appeals from the trial court's judgment granting the Hospital's motions

for summary judgment on Mock's breach-of-contract, DTPA, and UDJA claims. We affirm in part and reverse and remand in part.

## BACKGROUND

On October 27, 2018, Mock sought medical treatment at the Emergency Department at the Hospital. Over the course of two-and-a-half hours, she was evaluated by nurses and physicians, administered a CT scan, and was prescribed medication. After Mock received this treatment, the Hospital provided her a form titled "Condition of Admission and Consent for Outpatient Care" (the Contract). The Contract provides the patient with an overview of services that may be provided, explaining that the procedures which may be performed during hospitalization or during an outpatient episode of care "may include laboratory procedures, x-ray examination, diagnostic procedures, medical, nursing or surgical treatment or procedures, anesthesia, or hospital services rendered as ordered by the Provider." The Contract also includes a financial agreement, providing the details regarding a patient's responsibility for payment in exchange for hospital services. The Contract provides in relevant part:

> 5. **Financial Agreement.** In consideration of the services to be rendered to Patient, Patient or Guarantor individually promises to pay the Patient's account at the rates stated in the hospital's price list (known as the "Charge Master") effective on the date the charge is processed for the service provided, which rates are hereby expressly incorporated by reference as the price term of this agreement to pay the Patient's account. Some special items will be priced separately if there is no price listed on the Charge Master.

The Contract also specifies that, if the patient is insured—as Mock was—payments owed to the Hospital will be determined by the terms of the patient's insurance plan:

> If supplies and services are provided to Patient who has coverage though a governmental program or through certain private health insurance plans, the hospital may accept a discounted payment for those supplies and services. In this event any payment required from

2

the Patient or Guarantor will be determined by the terms of the governmental program or private health insurance plan.

Mock signed the Contract, asked that the Hospital submit her incurred charges to her private healthcare insurer, and was discharged from the Hospital. Approximately one month later, Mock received a bill from the Hospital totaling $13,288.00. The bill's itemized statement included the services provided to Mock, including the charges for medication, laboratory studies, radiology testing, and injections. The bill also included an Evaluation and Management Services Charge (EMS Charge), labeled as a "Level 4 Emergency Department Charge" in the amount of $2,800.00.[1] After insurance adjustments, the total charges amounted to $8,960. Mock did not pay the billed amount and the bill was sent to a collection agency. Mock filed suit, alleging that she was not informed of the EMS Charge before her treatment, and that if she had been informed of it, she would have sought less expensive treatment elsewhere.[2] Specifically, Mock alleged that the Hospital's $2,800 EMS Charge was not disclosed to her before she consented to receive medical services, in violation of the DTPA and in breach of the Contract. Mock sought declaratory relief under the UDJA, *see* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011, specifically a declaration that

---

[1] The EMS Charge is also referred to as a "Facility Fee" or "EMS Fee." The EMS Charge is reflected on Mock's itemized statement as "1 LVL EMER DEPT." The itemized statement also includes charges for the specific treatments provided to Mock.

[2] Mock initially filed suit in Travis County District Court seeking damages and injunctive relief, after which the Hospital removed the case to federal court. *See Mock v. St. David's Healthcare P'ship, LP (Mock I)*, No. A-19-CV-611-RP, 2020 WL 4434929, at *5, (W.D. Tex. July 31, 2020), *report and recommendation adopted*, No. 1:19-CV-611-RP, 2020 WL 5250641 (W.D. Tex. Sept. 2, 2020). The Hospital filed a motion to dismiss the suit, which the trial court granted in part, finding Mock lacked standing to seek any forward-looking relief (explaining that injunctive relief would not address Mock's injury for which she was suing—her debt to the Hospital). *Id.* Mock voluntarily moved to dismiss her remaining claims in federal court and then filed the underlying suit in Travis County District Court in March 2021.

3

"the Hospital's practice of charging a separate and unagreed upon EMS Fee, in addition to the charges for the specific services and treatments provided, is not authorized by Defendant's form Contract, constitutes a Breach of Contract, is violative of Texas common law, and/or is violative of the DTPA." Mock sought injunctive relief under the DTPA under subsections 17.50(a)(1) and (3). *See* Tex. Bus. & Com. Code §§ 17.50(a)(1) (providing consumer may maintain action against defendant for false, misleading, or deceptive act or practice); (3) (providing consumer may maintain action for any unconscionable action or course of action by any person); *id.* § 17.50(b) (providing list of available forms of relief). Mock also sought relief on behalf of a putative class under Texas Rule of Civil Procedure 42.[3]

On April 7, 2021, the Hospital filed a traditional motion for summary judgment on all of Mock's claims, arguing they were barred by the 2-year statute of limitations. Mock responded, the court held a hearing, and the trial court denied the motion. Then, approximately one year later, the Hospital filed a traditional motion for partial summary judgment on Mock's breach-of-contract claim (challenging only the "breach" element), and Mock filed a response with evidence, including a declaration of Dr. Kenneth Totz, a purported expert in medical billing. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019) (breach-of-contract claim requires plaintiff plead and prove: (1) valid contract exists; (2) plaintiff performed or tendered performance as contractually required; (3) defendant breached contract by failing to perform or tender performance as contractually required; and (4) plaintiff sustained damages due to breach). The Hospital filed objections to this declaration, which the trial court sustained. After a hearing, the trial court granted the Hospital's motion for partial summary

---

[3] Mock did not move to certify the class.

4

judgment. The Hospital then filed a motion for traditional summary judgment on Mock's remaining claims under the DTPA and UDJA, which the trial court also granted. The trial court entered final judgment, dismissing all of Mock's claims, including those brought on behalf of the putative class. Mock timely appealed.

In two issues, Mock argues that the trial court erred when it granted the Hospital's traditional motion for partial summary judgment on Mock's breach-of-contract claim, and that the trial court erred when it granted the Hospital's traditional motion for summary judgment on Mock's DTPA and UDJA claims. Mock argues that there was a genuine issue of material fact on the breach-of-contract claim as to whether the EMS Charge covered "services" as defined in the Contract and that the trial court erred in excluding Mock's expert declaration of Totz. Mock also argues that the trial court erred in granting summary judgment on the DTPA and UDJA claims because the Hospital failed to demonstrate its entitlement to judgment as a matter of law.

## ANALYSIS

### 1. Did the trial court err in granting the Hospital's motion for partial summary judgment on Mock's breach-of-contract claim?

A defendant moving for traditional summary judgment must state the specific grounds for the motion and further show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment. *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013). We review a trial court's ruling on a motion for summary judgment de novo. *Id.* We must take as true all evidence favorable to the nonmovant and indulge every reasonable

5

inference and resolve any doubts in the nonmovant's favor. *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

*Whether the Contract's definition of "services" is ambiguous*

In her first sub-issue, Mock argues that the trial court erred in granting the Hospital's motion for partial summary judgment on her breach-of-contract claim because the terms of the Contract are ambiguous based on the Contract's use of the term "services." Specifically, she claims that the Contract required her to pay only for "services and treatment rendered" at the rates stated in the Hospital's price list (known as a "Charge Master"); the EMS Charge is not a "service or treatment rendered" because it only accounts for overhead and operational expenses; and the EMS Charge is not otherwise disclosed or mentioned in the Contract. As a result, she argues that there is a fact issue as to whether the Hospital breached the Contract by including the EMS Charge on the billing statement it sent to her.

When interpreting a written contract, we ascertain and give effect to the written expression of the parties' intent. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). "We interpret the contract as a whole, and contract terms are given their plain, ordinary, and generally accepted meaning, unless the contract itself directs otherwise." *Id.* (citing *Great Am. Ins. v. Primo*, 512 S.W.3d 890, 892–93 (Tex. 2017)). "We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). Under general rules of construction, we avoid strictly

6

construing a contract's language if it would lead to absurd results. *See Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011).

Whether a contract is ambiguous is a question of law. *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018). "If the language lends itself to a clear and definite legal meaning, the contract is not ambiguous and will be construed as a matter of law." *Great Am. Ins.*, 512 S.W.3d at 893. A contract is ambiguous "when the contract is actually 'susceptible to two or more reasonable interpretations'"; "[a]n ambiguity does not arise merely because a party offers an alternative conflicting interpretation." *Id.* (quoting *American Mfrs. Mut. Ins. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). The fact that the parties may disagree about the contract's meaning does not create an ambiguity. *Id.* "If the contract contains an ambiguity, a fact issue arises as to the parties' intent, and summary judgment is not the proper vehicle for resolving the contract dispute." *Best Buy Stores, L.P. v. Shops at Pinnacle Park, LLC*, No. 05-17-01054-CV, 2018 WL 6716620, at *4 (Tex. App.—Dallas Dec. 21, 2018, no pet.) (citing *Plains Expl. & Prod. Co. v. Torch Energy Advisors, Inc.*, 473 S.W.3d 296, 305 (Tex. 2015)).

In its motion for partial summary judgment, the Hospital argued that it fully complied with the Contract because the Hospital billed Mock for only the discounted amount her insurer determined was owed under her private health insurance plan, the EMS Charge is a standard practice in the hospital industry, and Mock was not overbilled because the Contract's list of possible services included those related to the EMS Charge. As part of its summary-judgment evidence, the Hospital submitted the affidavit of Lisa Berryhill, a medical billing specialist employed by a company that performs billing and collections services for medical facilities, including the Hospital. Berryhill's affidavit states that the EMS Charge is a standard practice in the hospital industry and that it "covers the resources necessary to process and treat all emergency

7

room patients, including nursing, clerical, and administrative services provided by various emergency room personnel, including registration staff, nurses, technicians, and medical assistants." The affidavit states that, while services related to a patient's specific medical condition (i.e., antibiotic or pain medication, laboratory studies, radiology tests) will be assessed as an individual charge as reflected on the Hospital's Charge Master (which contains all of a hospital's standard charges for services and supplies), there are also "global" services that are necessary to treat all emergency room patients, which include administrative services like registration, discharge instructions, and use of an individual exam room. Instead of billing the patient for these "global" services individually, they are bundled into one charge—the EMS Charge. The EMS Charge also contains a component for overhead, operational, and administrative costs associated with providing the services or supplies. Based on Berryhill's affidavit, the Hospital points out that Section 1 of the Contract provided that the "services" to be provided to Mock "includ[ed], but [were] not limited to, emergency treatment or services . . . laboratory procedures, x-ray examination, diagnostic procedures, medical, nursing or surgical treatment or procedures, anesthesia, or hospital services rendered as ordered by the Provider" and that these are the types of "global services" bundled into the EMS Charge. Her affidavit states:

> For example, almost every patient has their vital signs monitored and receives use of an examination room, care from nurses and aides, and discharge instructions. These patients also receive administrative services, such as registration and billing and the creation of a medical record. These 'global' services that are necessary to treat all emergency-room patients are collectively referred to as Evaluation & Management Services.

In addition to Berryhill's affidavit, the Hospital also included portions of Mock's deposition testimony as part of its summary-judgment evidence. This testimony included Mock's

8

statements that she agreed to receive the "global services" (including the taking and monitoring of vital signs, nurse visits, and discharge instructions), that she expected she would have to pay for them, and that she recognized that the Hospital was not providing them for free.

Based on our review of the phrase "services to be rendered to Patient" in the context of Contract as a whole, we conclude that it is not ambiguous. *See Polaris Guidance Sys., LLC v. EOG Res., Inc.*, 575 S.W.3d 85, 89 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("Whether a contract is ambiguous is a question of law for the court to decide by examining the agreement as a whole in light of the circumstances present when the contract was entered."). Further, applying the plain meaning of this phrase and considering Mock's testimony and Berryhill's affidavit (and without evidence controverting them as described *infra*), we conclude that the Hospital established as a matter of law that it did not breach the Contract by charging Mock the EMS Charge. Thus, we overrule Mock's first sub-issue and turn to whether the trial court abused its discretion in excluding the Totz declaration.

*Whether the Totz declaration was properly excluded*

In her second sub-issue, Mock argues the trial court erred in granting the Hospital's motion for partial summary judgment on her breach-of-contract claim because the trial court abused its discretion by excluding the declaration of Dr. Kenneth Totz. Specifically, Mock argues the trial court abused its discretion in excluding the Totz declaration before providing Mock an opportunity to cure any procedural deficiencies. The Hospital responds that the declaration was properly excluded (1) based on its non-compliance with Section 132.001(d) of the Civil Practice and Remedies Code and (2) because it was conclusory and not based on personal knowledge of

9

the facts of the case. *See* Tex. Civ. Prac. & Rem. Code § 132.001(d) (providing template for unsworn declaration).

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *National Liab. & Fire Ins. v. Allen,* 15 S.W.3d 525, 527–28 (Tex. 2000). Section 132.001 provides that "an unsworn declaration may be used in lieu of a written sworn verification, certification, oath, or affidavit required by statute or required by a rule, order, or requirement adopted as provided by law" provided that the declaration is made in writing and subscribed by the person making the declaration as true under penalty of perjury. *See* Tex. Civ. Prac. & Rem. Code § 132.001(a), (c). The declaration must also include a jurat that includes the declarant's name, date of birth, and address. *Id.* § 132.001(d).

Here, the declaration includes Totz's name, a brief summary of his qualifications and experience, and his curriculum vitae. The declaration then provides a short summary of what an EMS Charge (or "facility fee," as the declaration calls it) entails, explaining that it "covers general overhead, administrative, and operational costs required to operate an emergency room facility." Finally, the declaration states that it is true under penalty of perjury. The Hospital objected to the declaration based on its failure to "substantially comply" with subsection 132.001(d) because it lacked Totz's birthdate and address. We agree. Texas case law holds that a lack of birthdate renders a declaration ineffective for failure to comply with Section 132.001(d). *See Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 702 & n.15 (Tex. 2019) (holding that declaration made under penalty of perjury provided no support for party's motion when declaration lacked statutorily required jurat because it lacked declarant's date of birth). Because we are bound to follow this authority, we conclude that the trial court did not

abuse its discretion when granting the Hospital's motion to strike the Totz declaration.[4] *See Workman v. Texas Comm'n on Envtl. Quality*, No. 03-23-00341-CV, 2024 WL 3056634, at *8 n. 7 (Tex. App.—Austin June 20, 2024, no pet.) (mem. op.) (recognizing that declaration was incomplete because statutorily required jurat did not include declarant's birthdate).

Next, Mock argues that she was wrongfully denied the opportunity to amend the unsworn declaration to comply with Section 132.001 before the trial court struck it. *See* Tex. Civ. Prac. & Rem. Code § 132.001. Texas Rule of Civil Procedure 166a(f) provides that "[d]efects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend." Here, the Hospital filed several objections to Mock's summary-judgment evidence, including its objection that Totz's declaration should be struck based on the declaration's failure to comply with Section 132.001(d), namely the failure to include Totz's birthdate. But the Hospital also objected that Totz's declaration did not include relevant disclosures and Totz's credentials as required by Texas Rule of Civil Procedure 195.5. *See* Tex. R. Civ. P. 195.5 (listing disclosures that must accompany expert testimony). In response to the Hospital's objections, Mock did not seek leave to amend the declaration to comply with subsection 132.001(d), but rather provided substantive arguments as to why she believed the birthdate was not required. In contrast, she sought to cure the deficiency in

---

[4] While we recognize that Mock cites to holdings by our sister courts that a declaration's defects are not fatal to a declaration if there is "substantial compliance" with the jurat, *see In re Cook Compression LLC*, No. 04-20-00517-CV, 2020 WL 6928397, at *3 (Tex. App.—San Antonio Nov. 25, 2020, orig. proceeding) (mem. op.), we are not bound to follow those authorities as we are the Texas Supreme Court and our own precedent. *See Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 565 (Tex. App.—Austin 2004, no pet.) ("As an intermediate appellate court, we are not free to mold Texas law as we see fit but must instead follow the precedents of the Texas Supreme Court unless and until the high court overrules them or the Texas Legislature supersedes them by statute.").

the Rule 195.5 disclosure by moving for leave to serve the disclosures and Totz's credentials, which the trial court granted. Thus, the record shows that Mock had the opportunity to seek leave to amend the declaration but did not do so. Therefore, to the extent Mock complains that she should have been given leave to amend the declaration, we hold that Mock did not preserve error on the trial court's alleged failure to allow her the opportunity to amend. *See Lewis v. Rucker*, No. 02-16-00254-CV, 2017 WL 4172063, at *3 (Tex. App.—Fort Worth Sep. 21, 2017, pet. denied) (mem. op.) (no abuse of discretion where trial court denied nonmovant opportunity to cure defect in summary-judgment affidavit when nonmovant did not seek to do so before trial court entered summary judgment); *see also Coleman v. Woolf*, 129 S.W.3d 744, 749–50 (Tex. App.—Fort Worth 2004, no pet.) (in absence of timely request, objection, or motion seeking opportunity to cure defects, trial court did not err by failing to grant unrequested relief of providing opportunity to cure defect in controverting affidavit). Accordingly, because Totz's declaration fails to comply with subsection 132.001(d) and because Mock failed to seek leave to cure the defect, the trial court did not abuse its discretion in excluding the declaration on this basis. We overrule Mock's second sub-issue.

Thus, based on the uncontroverted evidence, including Berryhill's affidavit, the Contract's unambiguous language regarding "services to be rendered to Patient," and Mock's own testimony, we conclude that the trial court did not err in granting the Hospital's motion for partial summary judgment on Mock's breach-of-contract claim. Having overruled Mock's first issue

challenging the trial court's summary judgment on her breach-of-contract claim, we next turn to her second issue.[5]

## 2. Did the trial court err in granting the Hospital's motion for summary judgment on Mock's DTPA and UDJA claims?

In her second issue, Mock argues the trial court erred in granting summary judgment on her DTPA and UDJA claims because the Hospital's summary-judgment motion only reiterated the arguments made in the Hospital's motion for partial summary judgment on the breach-of-contract claim. The Hospital responds that Mock's DTPA and UDJA claims arose from the same conduct as her breach-of-contract claim, and thus summary judgment on her DTPA claims and UDJA claims was the only logical result.

The DTPA allows consumers to sue for false, misleading, or deceptive acts or practices. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *see* Tex. Bus. & Com. Code § 17.50(a). To succeed on a DTPA claim, the plaintiff must show: (1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading, or deceptive acts (i.e., violated a specific laundry-list provision of the DTPA) or engaged in an unconscionable action or course of action; and (3) the DTPA laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury. *Amstadt*, 919 S.W.2d at 649.

Regarding her breach-of-contract claim, Mock's petition alleged that "[d]espite the lack of any contract agreement or promise to pay an EMS fee, [the Hospital] charged [Mock] an unexpected and unauthorized EMS Charge, which constitutes a material breach of the terms of the

---

[5] Because we have affirmed summary judgment on this ground, we need not address the Hospital's other grounds. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) (when order granting summary judgment does not specify grounds upon which trial court relied, we must affirm if any independent summary-judgment ground is meritorious).

contract." The record shows that the Hospital moved for partial summary judgment on only one element of Mock's breach-of-contract claim—the breach. *See New York Life Ins. v. Miller*, 114 S.W.3d 114, 121 (Tex. App.—Austin 2003, no pet.) (listing elements for breach-of-contract claim as: (1) existence of valid contract; (2) plaintiff performed or tendered performance; (3) defendant breached contract; and (4) plaintiff was damaged as result of breach).

Regarding her DTPA claims, Mock's petition asserted claims under Section 17.46(b), which provides that the term "false, misleading, or deceptive acts or practices includes, but is not limited to, the following acts:

> (12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; . . .
>
> (24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

*See* Tex. Bus. & Com. Code § 17.46(b)(12), (24) (cleaned up). Mock's allegations stemming from these subsections of the DTPA are as follows:

> This action involves the question as to whether Defendant's uniform practice of billing emergency care patients a substantial, separate, and undisclosed EMS [Charge] that was not mentioned to emergency room patients and was not contractually agreed upon for payment, is an unfair, false, deceptive and/or misleading practice, and whether this practice constitutes a Breach of Contract or a deceptive or unconscionable trade practice as defined by the DTPA.

After the trial court granted the Hospital's motion for partial summary judgment on the breach-of-contract claim, the Hospital argued it was entitled to summary judgment on Mock's

14

DTPA claims and cited the above allegations from Mock's petition in support. The Hospital argues that, based on the language in Mock's pleadings, the basis for both Mock's breach-of-contract claim and DTPA claims are on the Hospital's "failure to disclose" the EMS Charge; because Mock could not prove the Hospital's breach of the Contract—in that the EMS Charge was authorized under the Contract and billed to Mock appropriately—she could not prove her DTPA claims. Specifically, the Hospital's counsel argued:

> Well, this court has already determined that the defendant's conduct in assessing and billing Miss Mock's—the EMS charge complied with the contract, notwithstanding the failure to disclose allegations. And so, Texas law, we believe, holds that DTPA claims that are arising out of the same conduct, conduct about billing this fee that the billing of the fee is permissible under this contract, that it must be dismissed as a matter of law. And that's our first ground for summary judgment on the DTPA.[6]

Mock responds that the "failure to disclose" conduct on which the DTPA claims are based took place before treatment was provided to Mock, while the conduct on which the breach-of-contract claim is based occurred after treatment was rendered, and after the Contract was presented to Mock upon her discharge. She argues that the failure to disclose the EMS Charge before the Contract was presented as an "omission" under the DTPA and thus wholly separate from the breach-of-contract claim.

---

[6] In the hearing on the Hospital's motion for summary judgment, the Hospital's counsel stated that the Hospital's second ground for summary judgment was purportedly based on Mock's lack of economic or mental anguish damages under subsection 17.50(a). *See* Tex. Bus. & Com. Code § 17.50(a) (listing available damages for DTPA claim). However, the Hospital advanced this ground for the first time in its reply to Mock's response to the Hospital's motion for traditional summary judgment, and thus we do not consider it. *See Reliance Ins. v. Hibdon*, 333 S.W.3d 364, 378 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (summary-judgment movant is not entitled to use reply to raise new and independent summary-judgment grounds).

The Hospital urges that Texas courts have routinely held that DTPA claims cannot arise from actions that are permissible under a contract. *E.g.*, *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 333 (Tex. 1983); *Affiliated Capital Corp. v. Commercial Fed. Bank*, 834 S.W.2d 521, 528 (Tex. App.—Austin 1992, no writ); *DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 103 (Tex. 1999). But none of these cases address the factual scenario that is present here—that is, a contract that is presented to the patient after the patient has already been treated. The uncontroverted summary-judgment evidence showed that Mock was not first warned of the EMS Charge before signing the Contract. We note that Mock pleaded causes of action under the DTPA under two subsections: representing that an agreement that confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law (subsection 17.46(b)(12)); and failure to disclose (subsection 17.46(b)(24)). At least one of the cases cited by the Hospital supports its argument that a DTPA claim cannot be maintained if the contract authorized the conduct. *See Ogden*, 662 S.W.2d at 333 (holding no violation of subsection 17.46(b)(12) where bank foreclosed for partial default since contract lien gave bank that right). But even assuming without deciding that those cases are applicable here, the Hospital has not cited, nor have we found, any authority supporting this proposition in the context of a DTPA action based on a "failure to disclose" (i.e., subsection 17.46(b)(24)) theory. Thus, while at least some case law may exist to support a holding that a successful DTPA claim based on subsection 17.46(b)(12) may first require a breach-of-contract finding, we cannot conclude that the same is true for a cause of action based on the plaintiff's allegations that the defendant failed to disclose information under subsection 17.46(b)(24). *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304–05 (Tex. 2006) (while failure to perform contract would typically violate only contract, misrepresentations made before entering into contract may still be actionable under DTPA); *see also Formosa Plastics*

16

*Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) (providing that breach of contract, *without more*, does not violate DTPA). We conclude that the Hospital failed to establish that no material fact issue exists as to the only challenged element of Mock's DTPA claim—whether the Hospital engaged in false, misleading, or deceptive acts.

Under Texas summary-judgment law, the party moving for summary judgment carries the burden of establishing that no material fact issue exists as to one or more essential elements of the plaintiff's cause of action and that the movant is entitled to judgment as a matter of law. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex. 2000). The motion must itself expressly state the grounds upon which it is made, and it must stand or fall on these grounds alone. *See McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex. 1993). While the alleged facts surrounding the two causes of action may be based on the same conduct, each cause of action requires different elements of proof; a claim under the DTPA includes its own set of elements—which are independent of the elements required for a breach-of-contract action. For example, a claim under the DTPA requires that the plaintiff prove the element of causation by a preponderance of the evidence. *See* Tex. Bus. & Com. Code § 17.50(a) (DTPA cause of action may be maintained when deceptive act is "producing cause" of economic or mental anguish damages). Here, the Hospital's motion for summary judgment on Mock's DTPA claims did not explain this element or provide analysis as to why Mock could not meet her burden to prove it. Accordingly, we conclude that the Hospital failed to meet its burden to show the absence of a genuine issue of material fact on Mock's DTPA claims and that it was entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Willrich,* 28 S.W.3d at 23.

17

We turn next to the trial court's summary judgment on Mock's UDJA claims. Tex. Civ. Prac. & Rem. Code §§ 37.001–.011. Mock's first amended petition sought the following declarations:[7]

- Defendant's billing practices with respect to EMS Fees are unconscionable under Texas common law;
- Defendant's billing practices with respect to EMS Fees are an unconscionable action or course of action as defined by Tex. Bus. & Com. Code § 17.45(5), a provision of the DTPA;
- Defendant has a duty to reasonably disclose its intention to bill EMS Fees to emergency room patients in advance of such Fees being incurred;
- Defendant's billing practices as they relate to Plaintiff and Class Members are deceptive trade practices as defined in the DTPA and, more particularly, under Tex. Bus. & Com. Code §§ 17.46 and 17.45.

The UDJA is "remedial; its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." *Id.* § 37.002(b). Section 37.004 establishes that a person whose rights, status, or other legal relations are affected by a statute may have determined any question

---

[7] Mock also sought declarations specific to her breach-of-contract claim, including: "Plaintiff and Class members are not liable to Defendant for EMS Fees" and "The form Contract used by the Hospital during the Class period does not describe, mention, or authorize the undisclosed EMS Fees complained of herein, and does not contain any agreement or promise for emergency room patients to pay such EMS Fees" and "Class Members who made payments for their emergency room visit are entitled to restitution of the payment amounts attributable to the EMS Fee, and Class Members who have an outstanding balance on their accounts are entitled to a reduction in the outstanding balances attributable to the EMS Fees." Because we have affirmed the portion of the trial court's order granting the Hospital's summary-judgment motion as to Mock's breach-of-contract claim, we conclude Mock is not entitled to these two requested declarations. *See Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 297–98 (Tex. App.—Austin 2018, pet. denied) (explaining that declaratory relief may be obtained with respect to cause of action or other substantive right); *Nehls v. Hartman Newspapers, LP*, 522 S.W.3d 23, 29 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (request for declaratory relief is moot if live controversy no longer exists).

18

of construction arising under the statute and obtain a declaration of rights, status, or other legal relations thereunder. *See id.* § 37.004(a). Generally, a party may obtain a declaratory judgment "if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Id.* (quoting *Bexar-Medina-Atascosa Cntys. Water Control & Improvement Dist. No. 1 v. Medina Lake Prot. Ass'n*, 640 S.W.2d 778, 779–80 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.)). The courts' "general powers" under the UDJA provide "discretion to enter a declaratory judgment so long as it will serve a useful purpose or will terminate the controversy between the parties." *Beadle*, 907 S.W.2d at 468.

In its motion for summary judgment and on appeal, the Hospital argues that a UDJA claim is a "procedural device based on an underlying substantive claim" and that therefore, if Mock's DTPA claims fail, her claims for declaratory judgment also fail. But we have concluded the trial court erred when it granted summary judgment on Mock's DTPA claims. In this context, we similarly conclude that the trial court erred when it granted summary judgment on Mock's related UDJA claims.

For example, Mock claims—and the Hospital does not explicitly deny—that a live controversy exists between the two parties: for one, Mock argues that she should have been informed of the EMS Charge before medical treatment, while the Hospital argues it has no such duty. In addition, the parties dispute whether the Hospital's "billing practices with respect to EMS Fees are an unconscionable action or course of action as defined by the DTPA." We conclude that

19

these disputes constitute a "real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute" sufficient to warrant relief under the UDJA. *Id.* Accordingly, for the reasons that we have stated above as to Mock's DTPA claims, we conclude the trial court erred in granting the Hospital's summary-judgment motion on Mock's related UDJA claims. *See Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 297–98 (Tex. App.—Austin 2018, pet. denied) (explaining that declaratory relief may be obtained with respect to cause of action or other substantive right). We sustain Mock's second issue.

### 3. Did the trial court err in denying the Hospital's motion for summary judgment on its limitations defense?

Relying on *Baker Hughes*, the Hospital argues in its motion for rehearing that we must consider whether the trial court erred in denying its earlier motion for summary judgment on its limitations defense. *See Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 6 (Tex. 1999).

"The general rule is that a denial of a summary judgment is not reviewable on appeal." *Cincinnati Life Ins. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). However, this "rule does not apply when a movant seeks summary judgment on multiple grounds and the trial court grants the motion on one or more grounds but denies it, or fails to rule, on one or more other grounds presented in the motion and urged on appeal." *Baker Hughes*, 12 S.W.3d at 6. When that is the case, "courts of appeals should consider all summary judgment grounds the trial court rules on and the movant preserves for appellate review that are necessary for final disposition of the appeal when reviewing a summary judgment." *Cincinnati Life Ins.*, 927 S.W.2d at 626. This duty "does not depend on the number of motions filed, when they were presented to the trial court, or when the trial court ruled." *Baker Hughes*, 12 S.W.3d at 5–6. For purposes of our analysis, we will

20

assume that the Hospital's motion for summary judgment on its limitations defense falls within the *Baker Hughes* rule.

However, we nonetheless conclude that the trial court did not err in denying said motion. "A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). "[T]he defendant has the burden regarding any issues raised that affect which days count toward the running of limitations—such as accrual, the discovery rule, and tolling." *Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021). If the defendant meets that burden, "the plaintiff can [nonetheless] avoid summary judgment by raising a genuine issue of material fact on any equitable defense that its suit should not be barred even though the limitations period has run—such as fraudulent concealment, estoppel, or diligent service." *Id.* at 89.

Mock initially filed suit in state court in 2019, well within the applicable two-year statute of limitations. *See* Tex. Bus. & Com. Code § 17.565; *KPMG Peat Marwick*, 988 S.W.2d at 749 (two-year statute of limitations applies to DTPA claims). Shortly thereafter, the Hospital removed the case to federal court pursuant to the Class Action Fairness Act (CAFA). CAFA was enacted in 2005 and expanded federal courts' diversity jurisdiction over class action lawsuits. 28 U.S.C. § 1332(d)(3). However, CAFA also imposes limits on federal courts' exercise of that jurisdiction. As is applicable here, "a district court *shall* decline to exercise jurisdiction" when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." *Id.* § 1332(d)(4)(B) (emphasis added).

After the federal court dismissed one of Mock's claims for lack of standing—a claim that was not reasserted in the case below—Mock filed a Rule 41(a)(2) motion to dismiss, arguing that CAFA's jurisdictional exceptions applied. *See* Fed. R. Civ. P. 41(a)(2) ("[A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."). The parties stipulated that the Hospital "is an unincorporated association organized under the laws of Texas with its principal place of business in Austin, Texas" and that "[g]reater than two-thirds of the members of the proposed plaintiff class are residents of Texas." *See* 28 U.S.C. § 1332(d)(4)(B). The court granted Mock's motion to dismiss, and she refiled her claims in state court twelve days later, on March 16, 2021, after the two-year statute of limitations had lapsed.

As discussed above, shortly after the case was filed in state court, the Hospital filed a motion for summary judgment on its limitations defense. In response, Mock raised several tolling issues, including Section 16.064 of the Civil Practice and Remedies Code, which suspends any applicable limitations period for "[t]he period between the date of filing an action in trial court and the date of a second filing of the same action in a different court" if, "because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed" and "not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction." Tex. Civ. Prac. & Rem. Code § 16.064(a). Because Mock raised the existence of Section 16.064's savings clause in response to the Hospital's motion for summary judgment, it was the Hospital's summary judgment burden to conclusively establish that its remedy did not apply. *See Draughon*, 631 S.W.3d at 88. We conclude that it failed to do so.

22

The Hospital argues that Mock "voluntarily nonsuited" the case in federal court; therefore, Section 16.064 does not apply. *See CHCA Woman's Hosp. , L.P. v. Lidji*, 403 S.W.3d 228, 233 (Tex. 2013) ("[A] voluntary nonsuit does not interrupt the running of the statute of limitations."). Not so. Rather, she filed a motion to dismiss, citing the court's lack of jurisdiction as the basis for dismissal. And the plain text of § 16.064 applies to dismissals for want of jurisdiction regardless of which party—if any—seeks to dismiss the case. *See* Tex. Civ. Prac. & Rem. Code § 16.064(a). The magistrate characterized Mock's argument in her motion to dismiss as follows:

> [i]f the Court agrees with Defendant that the lapse of time or other reasons makes it too late to raise any jurisdiction exceptions, and if this Court is content to hear this case regardless of any potential exceptions to CAFA jurisdiction, then Plaintiff has no problem with this case continuing to be litigated in federal court. However, if this Court determines that an exception to its jurisdiction applies and prevents this action from being heard in federal court, then the suit should be dismissed without prejudice and without penalty to Plaintiff. After all, it was Defendant that removed the case to federal court, but Plaintiff is content to have the case remain here.

*Mock v. St. David's Healthcare P'ship, L.P.*, No. A-19-CV-611-RP, 2021 WL 75699, at *2 (W.D. Tex. Jan. 8, 2021), *report and recommendation adopted*, 1:19-CV-611-RP, 2021 WL 8080549, at *1 (W.D. Tex. Mar. 4, 2021). At the time she filed her motion to dismiss, the deadline to seek remand had passed. *See* 28 U.S.C. § 1447(c). Thus, rather than wait to inevitably be poured out of federal court, Mock sought to expedite the dismissal on the basis that CAFA's abstention provisions applied. *See Mock*, 2021 WL 75699, at *2. And in its report, the magistrate concluded that CAFA's jurisdictional exceptions applied. *See id.* at *2 ("Under the language of CAFA, therefore, the Court '*shall* decline to exercise jurisdiction' over this case. 28 U.S.C. § 1332(d)(4). That would seem to settle matters.").

23

Nevertheless, although the court concluded that CAFA's jurisdictional exceptions applied, it noted that "the 'local controversy' and 'home state' exceptions require abstention from the exercise of jurisdiction and are not truly jurisdictional in nature." *Id.* at *3 (quoting *Watson v. City of Allen*, 821 F.3d 634, 639 (5th Cir. 2016)). Thus, "[t]he language of CAFA . . . creates the awkward result that the exceptions 'do not deprive federal courts of jurisdiction, but rather, act as a limitation upon the exercise of jurisdiction granted.'" *Id.* at *3 (citation modified) (quoting *Wallace v. Louisiana Citizens Prop. Ins. Corp.*, 444 F.3d 697, 701 (5th Cir. 2006)). Therefore, according to the Hospital, the dismissal was not truly jurisdictional in nature and Section 16.064 does not apply. *See* Tex. Civ. Prac. & Rem. Code § 16.064(a) (providing that its tolling remedy only applies if dismissal was "because of lack of jurisdiction").

Federal courts draw a distinction between dismissing a case for lack of jurisdiction and declining to exercise jurisdiction over that case. *See, e.g.*, *Watson*, 821 F.3d at 639 (citing *Hollinger v. Home State Mut. Ins.*, 654 F.3d 564, 568 (5th Cir. 2011) (per curiam)). However, for purposes of Section 16.064, we do not. *See Vale v. Ryan*, 809 S.W.2d 324, 327 (Tex. App.—Austin 1991, no writ) ("[A] federal court's refusal to exercise jurisdiction over a pendent state claim is tantamount to a dismissal for lack of jurisdiction."); *Triple P.G. Sand Dev., LLC v. Nelson*, 651 S.W.3d 491, 497 (Tex. App.—Houston [14th Dist.] 2022, no pet.) ("To the extent the San Jacinto Companies argue Section 16.064's applicability is limited to dismissals involving lack of subject matter or personal jurisdiction, we disagree. We have recognized that the tolling provision in Section 16.064 applies when a court declines to exercise its jurisdiction under analogous circumstances.").

In *Sanders v. Boeing Co.*, the Texas Supreme Court held that the *reasoning* underpinning a court's dismissal controls for purposes of Section 16.064's savings clause,

24

regardless of whether that reasoning was correct. *See* 680 S.W.3d 340, 349 (Tex. 2023) ("If the prior action was dismissed 'because of lack of jurisdiction,' [§ 16.064(a)(1)]'s plain-language requirement is satisfied even if the court actually had jurisdiction or could have had it if the jurisdictional facts were properly pleaded."); *see also* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/because, (last visited October 31, 2025) (defining "because" as "for the reason that"). And, importantly, "[s]ection 16.064 does not require that the prior court dismissed the action 'solely' because of lack of jurisdiction." *Sanders*, 680 S.W.3d at 349 n.14.

Because the federal court here dismissed the case, "at least in part," for lack of jurisdiction, we conclude that the Hospital did not conclusively establish that the savings clause of Section 16.064 did not apply to Mock's claims.**8** *See Sanders*, 680 S.W.3d at 345; *see also Mock*, 2021 WL 75699, at *3 ("[The Hospital] argues that Mock cannot invoke CAFA's local controversy and home state exceptions because she failed to raise them within a reasonable time having waited fourteen months to bring the issue up. This Court disagrees."); *id.* at *5 n.5 ("[The Hospital] also argued that the Court should not dismiss this case because it 'implicates federal transparency law' and First Amendment concerns. Those, however, are not bases on which the Court could retain

---

**8** The Hospital also points to the following language in the magistrate's report as support for its contention that Mock's claims are barred by the statute of limitations: "[N]o limitations defense is adversely affected by her motion. If anything the plaintiffs may suffer some statute of limitations through dismissal." *Mock v. St. David's Healthcare P'ship, L.P.*, No. A-19-CV-611-RP, 2021 WL 75699, at *5 (W.D. Tex. Jan. 8, 2021), *report and recommendation adopted*, 1:19-CV-611-RP, 2021 WL 8080549, at *1 (W.D. Tex. Mar. 4, 2021).

This statement is obiter dictum, and we decline to follow it. *See Lund v. Giauque*, 416 S.W.3d 122, 129 (Tex. App.—Fort Worth 2013, no pet.) ("Obiter dictum is a statement not necessary to the determination of the case and that is neither binding nor precedential."). Additionally, the magistrate's report does not mention Section 16.064.

jurisdiction if it was so inclined . . . ."); *id.* at *5 (declining to award attorney's fees to Hospital as "the fees . . . incurred in this case were due to its own action in removing a case to federal court it knew fell within . . . the exceptions to jurisdiction"). Accordingly, the trial court did not err by denying the Hospital's first motion for summary judgment.

## CONCLUSION

We affirm the trial court's summary judgment on Mock's breach-of-contract claim and reverse the summary judgment on Mock's DTPA and related UDJA claims. The portion of the judgment granting summary judgment on Mock's DTPA and related UDJA claims is reversed and remanded to the trial court for further proceedings consistent with this opinion.

_____

Maggie Ellis, Justice

Before Justices Triana, Theofanis, and Ellis

Affirmed in Part; Reversed and Remanded in Part on Motion for Rehearing

Filed: November 7, 2025